**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In Re:  ) | Case No. 18-00507-als11 |
| ) | |
| **SIVYER STEEL CORPORATION**  ) | |
| ) | Chapter 11 |
| Debtor and Debtor in Possession.  ) | |
| ) | Hon. Anita L. Shodeen |
| 225 S. 33rd St.  ) | |
| Bettendorf, IA  52722  ) | **FIRST DAY MOTION (AMENDED)** |
| ) | **DEBTOR'S _EMERGENCY_ MOTION** |
| EIN: 39-0617810  ) | **FOR ORDER AUTHORIZING** |
| ) | **DEBTOR TO HONOR PRE-PETITION** |
| ) | **OBLIGATIONS TO EMPLOYEES AND** |
| ) | **BRIEF IN SUPPORT** |
| ) | |
| _____  ) | No Hearing Set |

Sivyer Steel Corporation. (the "Debtor" or "Sivyer"), Debtor and Debtor-in-Possession herein, by and through its proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq. of the law firm of Bradshaw, Fowler, Proctor and Fairgrave, P.C., and pursuant to the provisions of Bankruptcy Code sections 105(a), 364(b), 365, 507(a)(4), and 1107 and Bankruptcy Rule 4001, respectfully moves for entry of an Order authorizing Debtor (i) to pay prepetition accrued employee wages, salaries, related taxes and reimbursable expenses; (ii) to honor certain employee benefit obligations; and (iii) to honor all other terms and conditions of its employees' employment obligations (the "Motion"). In support of this Motion, Debtor shows the Court as follows:

## I.    JURISDICTION AND STATUTORY PREDICATE

1. This Court has jurisdiction of this Motion pursuant to 28 U.S.C. § 157 and § 1334. Venue of this case and Motion in this district is proper pursuant to 28 U.S.C. § 1408 and § 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), and 507.[1]

## II. BACKGROUND

3. On March 14, 2018 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. In addition to the facts set forth below, this Motion is supported by, and the Debtor incorporates by reference herein, the Declaration of Keith Kramer, President, in Support of First Day Motions.

5. Debtor continues in possession of its properties and the management of its businesses as a Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. Counsel for Debtor has consulted with counsel for TBK Bank and is authorized to state that TBK Bank does not object to the relief requested.

7. Sivyer is a certified steel foundry that manufactures high quality custom castings for many major manufacturing industries. It is a key manufacturer of steel components for the manufacturing, locomotion, shipping, military and airline industries.

8. Immediately prior to the Petition Date, Sivyer employed approximately 240 individuals. Of these 240 employees, approximately 26 are salaried employees.

**A.    Employee Prepetition Payroll, Vacation and Sick Leave Policies.**

9. Sivyer's hourly employees are paid weekly. Sivyer has paid these employees for the last pay period ending on March 3, 2018 and paid on March 9, 2018. There will be accrued

---

[1] All references to sections or codes, unless otherwise noted, are made to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and referred to herein as the "Bankruptcy Code".

2

but unpaid wages owing for March 4, 2018 through the Petition Date in an amount not to exceed $240,000.00, to be paid on March 16, 2018 and March 23, 2018.

10. Sivyer's salaried nonexempt employees are paid weekly. Sivyer has paid these employees for the last pay period ending on March 3, 2018 and paid on March 9, 2018. There will be accrued but unpaid wages and salaries owing for March 4, 2018 through the Petition Date in an amount not to exceed $21,000.00, to be paid on March 16, 2018 and March 23, 2018.

11. Sivyer's salaried employees are paid bi-weekly. Sivyer has paid these employees for the last pay period ending on February 18, 2018 and paid on March 2, 2018. There will be accrued but unpaid wages and salaries owing for March 4, 2018 through the Petition Date in an amount not to exceed $95,000.00, to be paid on March 16, 2018.

12. In addition, Sivyer has existing contractual compensation obligations including sick leave, vacation policies, holiday pay and other accrued compensation and some employees have accrued rights to time away from work under those policies. Sivyer seeks permission to honor those policies. Sivyer does not pay for un-accrued vacation or sick leave days so employees would simply have the continuing rights to have time away from work for such purposes that accrued prior to the Petition Date.

**B.    Employee Prepetition Medical/Dental Claims and Other Employee Benefits.**

13. Sivyer offers employees a Medical Plan through Continental Benefits, Dental Plan through Delta Dental, Vision Plan through United Healthcare, long and short-term disability through Unum, Basic Life and Accidental Death & Dismemberment Plan through Unum, Voluntary Life through American Heritage, and Pharmacy Benefits through CVS. Flex spending is offered through Diversified Benefit Services. Approximately $355 was funded pre-petition for the flex spending account and will not be paid until post-petition. These employee benefits are funded either through payroll deductions or contributions from Sivyer.

### C. United Steelworkers Union Due

14. Sivyer withholds certain dues from the wages their employees who are paying members of the United Steelworkers Union. There will be withheld but unpaid dues through the Petition Date in the approximate amount of $5,500.

### D. 401(k) Claims and Contributions.

15. Sivyer also maintains 401(k) plans known as the Sivyer Steel Corporation Hourly Employees' 401(k) Plan (the "Hourly 401(k) Plan") and the Sivyer Steel Corporation's Salaried Nonexempt 401(k) Plan (the "Salaried 401(k) Plan"). Eligible employees authorize Sivyer to withhold from their checks certain funds to be deposited in the Plan ("Employee 401(k) Withholdings"). Approximately $3,200.00 will be owed post-petition for Sivyer's contributions due pre-petition for the 401(k) Plans.

### E. Employee Withholding Tax Obligations.

16. In connection with its business operations, Debtor withholds certain federal and state income taxes from the wages and the salaries of their employees and also deducts Federal Insurance Contribution Act taxes from the wages and salaries of employees, as well as being required to pay certain taxes and other amounts with respect to their employees ("Employee Taxes").

17. Many of such amounts are "trust funds" that Debtor must hold for the benefit of the relevant federal and state taxing authorities. Failure to report and to remit the Employee Taxes could subject Debtor to substantial interest and penalties, as well as to criminal charges. In addition, Debtor's officers may be personally liable for such amounts in some cases. Debtor estimates that all Employee Taxes have been paid in full as of the Petition Date.

18. Failure to pay the taxes discussed could cause the taxing authorities to take aggressive actions to collect the "trust fund" taxes, including attempts to trace the funds and

perhaps cause extensive audits that interfere with Debtor's business. Also, the threat of liability of officers for unpaid "trust fund" taxes would unnecessarily distract officers whose undivided attention is required for the successful outcome of this case. Finally, the failure to pay the Employee Taxes would cause great concern among the work force and disrupt Debtor's relationship with those employees at a time when it is critical that their focus be upon maintaining Debtor's community confidence.

19.     Therefore, Debtor requests authority to pay pre-petition Employee Taxes in connection with Debtor's employee obligations to the extent it is determined that any of such Employee Taxes accrued prior to the Petition Date are in fact unpaid.

20.     In addition, from time to time, certain deductions from the employee obligations may be made that principally represent employee earnings that employees or, in the case of garnishments, judicial authorities, have designated for deduction from employee paychecks and paid accordingly (the "Deductions"). The failure to pay these benefits could result in hardship to certain employees. Debtor may receive inquiries from garnishors regarding Debtor's failure to submit, among other things, child support and alimony payments, which are not Debtor's property, but rather have been withheld from employee paychecks.

### III.     RELIEF REQUESTED

21.     Debtor requests by this Motion, entry of an order authorizing Debtor, in accordance with its stated policies, in the ordinary course of its businesses, and in its sole discretion, to (i) pay or honor certain prepetition employee wages, salaries, contractual compensation including sick pay, vacation pay (including personal days), holiday pay and other accrued compensation; (ii) make payments on amounts owed under accrued and unpaid medical and dental claims and plans; (iii) reimburse prepetition employee business expenses (including

travel, lodging, entertainment and other expenses); (iv) make prepetition contributions and pay benefits under the Employee 401(k) Withholdings; (v) pay all costs and expenses incident to the foregoing payments and contributions (including without limitation withholding taxes and processing costs); and (vi) other certain related relief as requested in this Motion. In no event does the relief requested herein contemplate the assumption of, or authority to pay, any obligations in respect of contribution and indemnification claims.

22. Prepetition, Sivyer has paid all obligations to its employees on a timely and current basis. Therefore, there are no substantial arrearages accrued and the only outstanding amounts owing to or for the benefit of employees are those accruing due to the timing of payments in the ordinary course of business, other than 401(k) match arrearages which the Debtor is not seeking authority to pay at this time. Debtor may not pay these employees or reimburse their expenses without prior Court approval.

23. Payment of these amounts is crucial for maintaining employee confidence and morale and will encourage employees to remain in the employ of Debtor at this critical time. To the extent the prepetition Employee Claims have been paid with a check that is outstanding and has not yet cleared Sivyer's payroll account or benefits account maintained at TBK Bank or any other Sivyer account, Sivyer requests that TBK Bank or any other bank at which an applicable account is maintained be authorized and directed to clear all such prepetition checks and to rely on Sivyer's directions as to the payment of such prepetition checks. This request would alleviate the need for Sivyer to reissue payroll and medical benefits checks and would prevent disruption in Sivyer's relationship with its employees.

24. By this Motion, Sivyer also seeks authority to honor all other terms and conditions of the employment of its employees as if this chapter 11 case had not been initiated, pending further orders of this Court.

25. Sivyer is highly dependent on its trained and experienced workforce and the retention of its current workforce is one of Sivyer's highest priorities during the continuation of its reorganization. Therefore, Sivyer's ability to maximize the value of its assets for the benefit of the creditors and other parties-in-interest will be adversely affected if Debtor is unable to retain the support and loyalty of its employees.

26. If Sivyer is unable to assure its employees that they will be paid promptly, or if the employees are not immediately assured of uninterrupted, critical benefit payments to which they are entitled, Sivyer's operations could suffer immediate and irreparable harm due to, at the very least, an undermining of employee morale. Failure to honor any other terms and conditions of their employment would only exacerbate this problem. The relief requested is thus necessary to preserve Sivyer's operations during its reorganization.

### IV.    BASIS FOR RELIEF REQUESTED

**A.    Payment of Pre-Petition Claims is Authorized by the "Necessity of Payment" Doctrine and the Bankruptcy Code.**

27. As a result of this chapter 11 filing, Debtor is prohibited from paying claims that arose prior to the Petition Date without receiving specific authorization. See 11 U.S.C. § 549(a)(2)(B). Each employee of Sivyer is, however, entitled to a priority claim for compensation earned in the 180-day period preceding the Petition Date in an amount up to $12,475. 11 U.S.C. § 507(a)(4). Claims on account of employee benefits obligations are also entitled to priority. See 11 U.S.C. § 507(a)(5). For each employee benefit plan, the priority claim is limited to an amount equal to the number of employees covered by such plan multiplied by $12,475, minus the sum of

7

(a) the aggregate amount paid to such employees as a priority claim for compensation and (b) the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan. 11 U.S.C. § 507(a)(5). Claims for payroll and related taxes are also entitled to priority status. 11 U.S.C. § 507(a)(8).

28. Because all such administrative expense or priority claims are entitled to be paid in full, accelerated payment of such claims at this time is appropriate, and this Court is authorized to grant such relief. See 11 U.S.C. § 105. In addition, in order to retain quality, experienced employees, to maintain their morale while this chapter 11 case is pending and to preserve Sivyer's operations during this critical time period, Sivyer should be granted the authority to pay its employees' pre-petition wages.

29. Section 105 of the Bankruptcy Code allows the Court to authorize payments on account of certain pre-petition claims when necessary and essential to the continued operation of the debtor. 11 U.S.C. § 105. This is generally referred to as the "necessity of payment" doctrine. In re NVR, L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (stating that, under section 105(a), a court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor"); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D. N.Y. 1989) (stating that a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to

reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").[2]

30.  Similar relief to that requested herein has consistently been granted by other bankruptcy courts pursuant to such doctrine. In re Spirit Holding Co., Inc., 157 B.R. 883 (Bankr. E.D. Mo. 1993); In re ATP Oil & Gas Corp., Case No. 12-36187 (Bankr. S.D. Tex. August 21, 2012); In re Cano Petroleum, Inc., Case No. 12-31549 (Bankr. N.D. Tex. March 16, 2012); In re Dynegy Holdings, LLC, Case No. 11-13686 (Bankr. S.D. N.Y. November 9, 2011); In re Otero Cnty. Hosp. Ass'n, Inc., Case No. 11-13686 (Bankr. D. N.M. September 12, 2011); In re Paul Transp., Inc., Case No. 10-13022 (Bankr. W.D. Okla., May 21, 2010); In re Stallion Oilfield Services, Inc., Case No. 09-13562 (Bankr. D. Del. October 20, 2009); In re Harold's Stores, Inc., Case No. 08-15027 (Bankr. W.D. Okla. November 7, 2008); In re Rocor Int'l, Inc., Case No. 02-17658 (Bankr. W.D. Okla., August 7, 2002).

31.  To retain quality, experienced workers, to maintain their morale while this chapter 11 case is pending, and to preserve Debtor's operations during its reorganization and sale process, Debtor should be granted the authority to pay the pre-petition claims of Debtor's employees in the ordinary course of Debtor's business.

32.  Debtor believes that substantially all of the amounts Debtor seeks to pay are either entitled to priority claim status under sections 503, 507(a)(4), and 507(a)(5) (with the exceptions cited herein).  Thus, granting the relief sought herein only would affect the timing of payment,

---

[2] See also In re Fin'l News Network, Inc., 134 B.R. 732, 736 (Bankr. S.D. N.Y. 1991) (pre-petition claims may be paid when doing so is "critical to the debtor's reorganization"); In re Eagle-Pitcher Indus., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (payment must be "necessary to avert a serious threat to the Chapter 11 process"); In re Structurlite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (payment necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately") (quoting In re Chateaugay Corp., 80 B.R. 279, 287 (S.D. N.Y. 1987)).

9

and not the amount, of these obligations to Debtor's employees to the extent they constitute priority claims.

33.   Many employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. Thus, they will be exposed to significant financial and health related problems if Debtor is not permitted to pay certain of the unpaid employee obligations, particularly wages, salaries and health benefits. Moreover, Debtor believes that if it is unable to honor its pre-petition obligations to employees, morale and loyalty will be jeopardized at a time when internal business support is critical.

34.   Further, if Debtor is not authorized to continue to pay its employees' benefits, then many of Debtor's employees may not be reimbursed or otherwise have its benefits claims paid. In addition, certain employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed, and may face having their health services terminated.

35.   Debtor believes such uncertainties will cause significant anxiety at precisely the time Debtor needs its employees to perform their jobs at peak efficiency.

36.   Debtor does not intend by this Motion to assume any executory obligations, and this Motion should not be deemed an assumption or adoption of any agreements or policies providing for coverage or any other executory contracts. Rather, Debtor simply intends in its discretion and in the exercise of business judgment, subject to this Court's approval, to maintain its current policies pending further business decisions relevant to the maximization of the value of Debtor's assets in this case.

## VI.  CONCLUSION

WHEREFORE, the Debtor, Sivyer Steel Corporation, requests that this Court enter an Order (i) authorizing Debtor to make payments of all amounts due on account of employee obligations that accrued prepetition; (ii) authorizing Debtor to honor any other terms and conditions of the employment of its employees; (iii) authorizing Debtor's banks to honor such checks and transfers as necessary to effectuate the relief requested herein; and (iv) granting such other relief as this Court may deem just and equitable under the circumstances.

Dated: March 14, 2018               */s/ Jeffrey D. Goetz*
                                    Jeffrey D. Goetz, Esq, IS #9999366
                                    Bradshaw Fowler Proctor & Fairgrave, PC
                                    801 Grand, Suite 3700
                                    Des Moines, IA  50309-8004
                                    515/ 243-4191
                                    515/ 246-5808 fax
                                    goetz.jeffrey@bradshawlaw.com

                                    Proposed General Reorganization Counsel for
                                    Sivyer Steel Corporation, Debtor and Debtor in
                                    Possession

## VERIFICATION BY COUNSEL FOR DEBTOR

I, Jeffrey D. Goetz, Esq., declare as follows:

1.    The matters stated in this Declaration are true and correct and within my own personal knowledge and belief. If called as a witness, I could and would competently testify hereto.

2.    I am an attorney licensed to practice law before this court and am the proposed General Reorganization Counsel for the Debtor. I am duly admitted to practice law in the courts of the State of Iowa and in the United States District Court for the Southern District of Iowa.

3.    I have personal knowledge of the facts set forth in the foregoing Motion and, if called upon as a witness, I could and would competently testify as to all of the matters stated therein.

I declare under penalty of perjury under the laws of the State of Iowa and the laws of the United States that the foregoing is true and correct and is executed this 14th day of March, 2018 at Des Moines, Iowa.

Dated:  March 14, 2018                    */s/  Jeffrey D. Goetz*
                                          Jeffrey D. Goetz

## VERIFICATION BY PRESIDENT, KEITH KRAMER

I, Keith Kramer, declare as follows:

1. I am the President of the Debtor, Sivyer Steel Corporation. The matters stated in this Declaration are true and correct and within my own personal knowledge and belief. If called as a witness, I could and would competently testify hereto.

2. I have personal knowledge of the facts set forth in the foregoing Motion and, if called upon as a witness, I could and would competently testify as to all of the matters stated therein.

I declare under penalty of perjury under the laws of the State of Iowa and the laws of the United States that the foregoing is true and correct and is executed this 13th day of March, 2018 at Bettendorf, Iowa.

Dated: March 14, 2018*/s/  Keith Kramer*
Keith Kramer, President
Sivyer Steel Corporation


## CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

*/s/Barbara Warner*