# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No.  18-00507-als11 |
| | ) | |
| **SIVYER STEEL CORPORATION** | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | Hon. Anita L. Shodeen |
| | ) | |
| c/o Robert J. Silhacek | ) | **DISCLOSURE STATEMENT WITH RESPECT** |
| Turning Point Management Advisors | ) | **TO DEBTOR'S PLAN OF LIQUIDATION** |
| 333 Washington Avenue North | ) | **DATED NOVEMBER 18, 2019** |
| Suite 300 | ) | |
| Minneapolis, Minnesota 55401 | ) | No Hearing Set. |
| | ) | |
| EIN: 39-0617810 | ) | |
| _____ | ) | |

November 18, 2019

Jeffrey D. Goetz, Esq., AT0002832
Vincent R. Ledlow, Esq., AT0013348
**BRADSHAW, FOWLER, PROCTOR &
FAIRGRAVE, P.C.**
801 Grand Ave., Ste. 3700
Des Moines, IA 50309-8004
Telephone:  (515) 246-5817
Facsimile:  (515) 246-5808
goetz.jeffrey@bradshawlaw.com
ledlow.vincent@bradshawlaw.com

General Reorganization Counsel to
the Debtor and Debtor in Possession

## I.   INTRODUCTION

Sivyer Steel Corporation (the "*Debtor*") submits this disclosure statement (the "*Disclosure Statement*") to holders of Claims against, and Interests in, the Debtor in connection with its solicitation of acceptances of a Plan of Liquidation Dated November 18, 2019 (the "*Plan*").[1]

This Disclosure Statement describes the key aspects of the Plan, the Debtor's Chapter 11 bankruptcy case (the "*Case*"), the Debtor's plan for its liquidation and wind down, and the formation and operation of a Liquidating Trust.  The Liquidating Trust will: (i) liquidate the Debtor's remaining assets; (ii) pursue claims and Causes of Action on behalf of stakeholders; (iii) analyze and reconcile Claims filed against the Debtor's Estate; and (iv) make distributions to Holders of Allowed Claims.  For a complete understanding of the Plan, you should read this Disclosure Statement, the Plan, and the exhibits and schedules attached to each.

The Debtor believes confirmation of the Plan is in the best interests of all parties, including the Debtor's Creditors and the Estate, and urges Creditors to vote to accept the Plan.

**To be counted, a ballot containing your vote to accept or to reject the Plan must be received by Jeffrey D. Goetz, Esq., Bradshaw Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, IA 50309 by no later than 4:00 p.m. (Central Standard Time) on a date to be set by the Court by separate notice**.

> **TO RECEIVE A DISTRIBUTION FROM THE LIQUIDATING TRUST ON ACCOUNT OF AN ALLOWED CLAIM, HOLDERS OF ALLOWED CLAIMS MUST PROVIDE THE DEBTOR AND/OR THE LIQUIDATING TRUSTEE WITH THEIR FEDERAL EMPLOYMENT IDENTIFICATION NUMBER ("*FEIN*") AND/OR THEIR FEDERAL TAX ID NUMBER.  THE FAILURE TO SUBMIT A FEIN AND/OR A FEDERAL TAX ID NUMBER MAY CAUSE THE HOLDER OF A CLAIM TO FORFEIT A RIGHT TO A DISTRIBUTION OF ESTATE ASSETS.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.   ANY REPRESENTATIONS OR INDUCEMENTS OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION REGARDING WHETHER OR NOT TO VOTE FOR THIS PLAN.   ANY NON-DEBTOR**

---

[1]   Capitalized terms not defined in the Disclosure Statement shall have the meanings assigned to them in the Plan.

**REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO WILL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT.  HOWEVER, THE DATA IN THE DEBTOR'S POSSESSION IS BASED ON THE RECORDS OF THE DEBTOR. ALTHOUGH GREAT EFFORT HAS BEEN TAKEN TO MAKE SURE IT FAIRLY REPRESENTS THE CURRENT POSITION OF THE DEBTOR, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ANY INACCURACY.**

**FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.  SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT ARE NOT COMPLETE AND ARE SUBJECT TO THE FULL TEXT OF THE APPLICABLE AGREEMENTS.**

**SECTION 1125 OF THE BANKRUPTCY CODE REQUIRES THERE BE A POSTPETITION DISCLOSURE IN THE FORM OF A DISCLOSURE STATEMENT THAT PROVIDES "ADEQUATE INFORMATION" TO CREDITORS BEFORE ANYONE MAY SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN.   THIS DISCLOSURE STATEMENT IS PREPARED IN ACCORDANCE WITH §1125 OF THE BANKRUPTCY CODE TO PROVIDE "ADEQUATE INFORMATION" TO**

CREDITORS IN THIS CASE. CREDITORS ARE URGED TO CONSULT THEIR OWN INDIVIDUAL COUNSEL AND TO REVIEW ALL RECORDS IN THIS CASE TO FULLY UNDERSTAND THE DISCLOSURES MADE, THE PLAN, AND ANY OTHER PERTINENT INFORMATION IN THE CASE. THE PLAN IS COMPLEX, ESPECIALLY SINCE IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT, AND ANY INTELLIGENT JUDGMENT CONCERNING ANY PROPOSED PLAN CANNOT BE MADE WITHOUT FULLY UNDERSTANDING THE INFORMATION CONTAINED IN THE PLAN AND DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT IS NOT INTENDED TO TAKE THE PLACE OF THE PLAN. EACH CREDITOR IS URGED TO STUDY THE PLAN IN FULL AND TO CONSULT THEIR COUNSEL WITH RESPECT TO THE PLAN, ITS TAX IMPLICATIONS, AND ITS EFFECT ON THE CREDITOR'S RIGHTS.

Any Creditor who has questions regarding the Plan or the Disclosure Statement may contact counsel for the Debtor:

Jeffrey D. Goetz, Esq., AT0002832
Vincent R. Ledlow, Esq., AT0013348
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
ledlow.vincent@bradshawlaw.com

General Reorganization Counsel for Debtor
And Debtor in Possession

The cost of distributing the Plan and Disclosure Statement, as well as the costs, if any, of soliciting acceptances, will be paid from property of the Estate as defined in the Plan and as allowed by the Bankruptcy Court. The Professional Fees of the Debtor's professionals are not contingent upon the acceptance of the Plan and are payable as a cost of administration upon Bankruptcy Court approval.

## II.    SUMMARY OF THE PLAN

### GENERAL OVERVIEW OF THE PLAN

**Plan**

Plan of Liquidation Dated November 18, 2019

**General Purpose**

The Plan contemplates the transfer of all the Debtor's remaining assets to the Liquidating Trust for the benefit of Holders of Allowed Claims, following any payments or transfers made on or before the Effective Date to the Holders of Allowed Claims or Interests and as provided for in the Plan.  The Holders of the Allowed Class 2 TBK Secured Claim, the Class 3 FCF Secured Claim, Allowed Professional Fee Claims, Allowed Administrative Claims, Allowed Non-Tax Priority Claims, Allowed Unclassified Priority Claims and Allowed Class 4 General Unsecured Claims shall share in the proceeds from the Liquidating Trust, but only to the extent provided in the Plan. The provisions of the Liquidating Trust and the Plan shall be implemented under the direction of the Liquidating Trustee.  The Debtor and the Committee shall select and identify the initial Trustee of the Liquidating Trust within ten (10) days before the Confirmation Hearing.  The Liquidating Trustee will be compensated at that Person's regular hourly rate in an amount to be determined and disclosed prior to the Confirmation Hearing.  The terms, conditions, and provisions of the Liquidating Trust Agreement will be prepared and finalized within ten (10) days prior to the Confirmation Hearing pursuant to an agreement among the Debtor, the Liquidating Trustee, and the Committee.  A copy of the Liquidating Trust Agreement will be provided to all parties in interest at least five (5) days prior to the Confirmation Hearing.

### SUMMARY OF CLAIMS

**Administrative Claims**

**(*Unclassified*)**

Administrative Claims consist of two subcategories: (i) Allowed Professional Fee Claims; and (ii) Allowed Other Administrative Claims.

Allowed Professional Fee Claims consist of the Allowed Administrative Claims of Professional Persons, including attorneys, accountants, and financial advisors retained by the Debtor or the Committee, or to be compensated under §§327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

Allowed Other Administrative Claims consist of  expenses which are or become Allowed under §503(b) of the Bankruptcy Code, other than Allowed Professional Fee Claims, which are entitled to priority under §507(a)(2) of the Bankruptcy Code, and shall include: (i) any actual and necessary costs and expenses incurred by the Debtor after the Petition Date with respect to preserving the Estate and operating the Debtor's business; (ii) §503(b)(9) Claims; (iii) Administrative Claims; and (iv) all fees and charges properly assessed against the Estate under 28 U.S.C. §1930.

The Holders of Allowed Professional Fee Claims and Allowed Other Administrative Claims will be paid in full by the Liquidating Trust according

to the Plan and Liquidating Trust Agreement.

The Debtor estimates unpaid Allowed Professional Fee Claims will be approximately $340,000.00[2] as of the Effective Date.

The Debtor estimates that unpaid Allowed Other Administrative Claims will be approximately $266,043.00, as of the Effective Date.[3]

**Unclassified Priority Claims**

(*Unclassified*)

Unclassified Priority Claims consist of Unsecured Claims of the kind specified in §507(a)(8) of the Bankruptcy Code, whether in the nature of priority tax claims or other priority claims but not including Non-Tax Priority Claims or Administrative Claims.

The Holders of Allowed Unclassified Priority Claims will be paid in full by the Liquidating Trust, net of any Assumed Liability, and will receive their share of Liquidating Trust Assets according to the Plan and Liquidating Trust Agreement.

The Debtor estimates that Allowed Unclassified Priority Claims will be approximately $1,250.00, as of the Effective Date.

**Class 1 Claim**

(*Non-Tax Priority Claims*)

Non-Tax Priority Claims consist of Unsecured Claims of the kind specified in §§507(a)(4) through (7) of the Bankruptcy Code, including priority wage or benefit claims or other priority Claims but not including Unclassified Priority Claims or Administrative Claims.

The Holders of Allowed Non-Tax Priority Claims will be paid in full by the Liquidating Trust and will receive their share of Liquidating Trust Assets according to the Plan and Liquidating Trust Agreement.

The Debtor does not believe there are any Class 1 Allowed Non-Tax Priority Claims.

**Class 2 Claim**

(*TBK Bank*)

Class 2 consists of the Secured Claim of TBK Bank SSB ("*TBK Bank*"). Pursuant to the APA between the Debtor and Sevier Steel Castings LLC ("*SSC*"), which was approved by the Bankruptcy Court on July 26, 2018, SSC refinanced the note with TBK and entered into a new financing agreement with TBK. As such, the Debtor is no longer obligated on the secured note with TBK. The Holder of the Class 2 Claim shall, therefore, receive no Distribution under the Plan on account of the Class 2 Claim which is deemed to be

---

[2] The Professional Fee Claim estimate of $340,000.00 includes the following: (1) estimated fees of the Liquidating Trustee, counsel for the Liquidating Trustee, and financial advisor for the Liquidating Trustee in the amount of $50,000.00; (2) estimated fees for the Debtor's professionals in the amount of $150,000.00; and (3) estimated fees for the Committee's professionals in the amount of $140,000.00.

[3] The Allowed Other Administrative Claims estimate of $266,043.00 includes the following: (1) agreed Administrative expense claim of Constellation New Energy in the amount of $112,928.61 pursuant to the Stipulation and Consent Order entered on November 19, 2018 (Docket No. 267); and (2) estimate of 503(b)(9) claims in the amount of $153,114.00.

Unimpaired.

Any Unsecured Claims asserted by TBK Bank are deemed fully satisfied and discharged pursuant to the Settlement Agreement among the Debtor, the Committee, TBK Bank, and FCF which was filed with the Court November 13, 2018 and which was approved by the Court December 11, 2018 (Docket No. 270) (subsequently referred to simply as the "*Settlement Agreement*"). Such Claim will, therefore, not receive any Distribution under the Plan.

**Class 3 Claim**

*(FCF)*

Class 3 consists of the Allowed Secured Claim of FCF Partners, LP ("*FCF*") in the amount of $150,000.00, pursuant to the Settlement Agreement.    FCF's Allowed Secured Claim was satisfied pursuant to the Settlement Agreement through a payment by the Debtor to TBK Bank in the amount of $150,000.00. This payment was because of an inter-creditor agreement among the Debtor, FCF, and TBK Bank prohibiting FCF from receiving any money on account of its Secured Claim unless and until TBK Bank was paid in full.  FCF's Proof of Claim, evidenced by Claim No. 69 filed in this Case that asserts a Secured Claim in the amount of $327,775.00 is deemed disallowed pursuant to the Settlement Agreement.

Because FCF's Allowed Secured Claim was satisfied in full pursuant to the Settlement Agreement, FCF will receive no Distribution under the Plan and is deemed Unimpaired.

The parties to the Settlement Agreement further agreed FCF's Unsecured Claim, filed as Claim No. 70 in the Case, is not Allowed, and FCF shall not receive any Distribution on account of such Unsecured Claim under the Plan.

**Class 4 Claims**

*(General Unsecured Claims)*

Class 4 General Unsecured Claims consist of any Unsecured Claim arising prior to the Petition Date that is not an Administrative Claim, Unclassified Priority Claim, Non-Tax Priority Claim, Class 2 Claim, Class 3 Claim, or Class 5 Interest (Interests of Equity Interest Holders which are described below).

General Unsecured Claims are Impaired under the Plan.  The Holders of Allowed General Unsecured Claims will receive a Pro Rata share of the Liquidating Trust Assets according to the Plan and the Liquidating Trust Agreement.  No interest shall accrue on Class 4 Claims.

According to the Debtor's calculations, the Allowed General Unsecured Claims total $10,064,652.00.  The Debtor's best judgment regarding the funds available for distribution to holders of such claims is set forth on Exhibit D to this Disclosure Statement.

**Class 5 Equity Interests**

Class 5 Equity Interests consist of Interests held by Equity Interest Holders, which include: (i) shares in a corporation, whether or not transferable or denominated as "stock" or as a similar security; (ii) interests of a limited partner in a limited partnership; or (iii) warrants or rights, other than rights to convert, purchase, sell, or subscribe to a share, security, or interest of a kind specified in (i) or (ii).  Equity Interest Holders shall receive no Distribution under the Plan, and all Equity Interests will be cancelled on the Effective Date.

Equity Interest Holders, therefore, are an Impaired class of Interests.

### IMPLEMENTING THE PLAN

| | |
|---|---|
| **Funding** | The Plan will be funded by the orderly liquidation of all remaining property of the Estate (including recoveries from Causes of Action) as well as from amounts received under the APA and Sale Order.  Distributions will be made from the Liquidating Trust after the Effective Date or as soon as reasonably practicable after the Effective Date under the terms of the Plan and the Liquidating Trust Agreement. |
| **Effective Date** | The Effective Date occurs after the occurrence of: (i) entry of the Confirmation Order by the Bankruptcy Court provided its effect has not been stayed.  If the entered Confirmation Order is the subject of any appeal, request for reconsideration, or other review, no stay of the Confirmation Order shall be deemed to be in effect; (ii) execution and delivery of the Liquidating Trust Agreement, in form and substance satisfactory to the Committee, including the occurrence of all conditions precedent to the effectiveness of the Liquidating Trust Agreement; (iii) delivery or effectuation of all other documents or agreements necessary to consummate the Plan; and (iv) appointment of the Liquidating Trustee by the Debtor and the Committee upon notice to the Bankruptcy Court.

The Effective Date will be March 1, 2020.  However, if a stay of the Confirmation Order is in effect on such day, then the Effective Date shall be the first day after which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect and all other conditions precedent, as stated above, have occurred. |

## III.   VOTING & CONFIRMATION PROCEDURES

Under the Bankruptcy Code, classes of claims that are unimpaired under a Chapter 11 plan are deemed to accept the plan and are not entitled to vote on the plan.  Classes of claims and interests that are not entitled to receive any distribution on account of their claims or interests are deemed to have rejected the plan and are not entitled to vote to accept or reject the plan.

Under the terms of the Plan, the Holders of Claims in Class 4 (General Unsecured Claims) are Impaired and are entitled to vote to accept or reject the Plan.

Votes on the Plan are not being solicited from Holders of Allowed Administrative Claims, Allowed Unclassified Priority Claims, Allowed Non-Tax Priority Claims (Class 1), the TBK Bank Secured Claim (Class 2), and the FCF Secured Claim (Class 3), which are Unimpaired and deemed to have accepted the Plan.  Votes on the Plan are also not being solicited from Holders of Equity Interests (Class 5).  Holders of Equity Interests will receive no Distribution under the Plan and, therefore, are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## A. Voting Procedures

If you are entitled to vote to accept or reject the Plan, a ballot is enclosed for the purpose of voting on the Plan.  Please carefully follow the instructions set forth in the ballot and vote and return your ballot to:

IF BY FIRST CLASS MAIL, HAND DELIVERY,
FACSIMILE, ELECTRONIC MAIL, OR OVERNIGHT COURIER:

Jeffrey D. Goetz, Esq.
BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
E-mail: goetz.jeffrey@bradshawlaw.com
Facsimile: (515) 246-5808

**TO BE COUNTED, YOUR BALLOT ACCEPTING OR REJECTING THE PLAN MUST BE RECEIVED NO LATER THAN THE VOTING DEADLINE, WHICH IS YET TO BE SET BY THE COURT (THE "*VOTING DEADLINE*").**

**ANY BALLOT WHICH IS EXECUTED BUT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN, OR FOR WHICH BOTH THE ACCEPTANCE AND REJECTION BOX IS CHECKED, WILL BE DEEMED AN ACCEPTANCE OF THE PLAN.  ANY BALLOT THAT IS EITHER UNRETURNED BY THE VOTING DEADLINE OR IS RETURNED BUT NOT EXECUTED WILL BE CONSIDERED NULL AND VOID AND WILL NOT BE COUNTED.**

If you are a Holder of a Claim entitled to vote on the Plan and did not receive a ballot, received a damaged ballot or lost your ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please call counsel for the Debtor, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Attention: Jeffrey D. Goetz, Esq. or Vincent R. Ledlow, Esq., 515-243-4191.

## B. Hearing on Sufficiency of Disclosure Statement & Plan Confirmation

The Court has not yet approved the Disclosure Statement or confirmed the Plan.  The Debtor has filed a motion asking the Court to exercise the authority it is given by Bankruptcy Code §105(d)(2)(b) to authorize the Debtor to submit the Plan to Creditors and interested

parties on a conditional basis and to combine the hearing on final approval of the Disclosure Statement with the hearing on confirmation of the Plan.

As of the filing of the Plan, the Bankruptcy Court has not yet scheduled a combined hearing on approval of the Disclosure Statement and confirmation of the Plan. The Debtor has filed a motion asking the court to issue an "Order and Notice of Deadlines and Hearing on First Amended Joint Combined Disclosure Statement and Plan of Liquidation", a copy of which will be enclosed with the Plan when it is mailed to you.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing to determine whether the Disclosure Statement meets the adequacy requirements of §1125 of the Bankruptcy Code and whether the Plan meets the requirements for confirmation established by §1129 of the Bankruptcy Code. Any party in interest may object to the adequacy of the Disclosure Statement or confirmation of the Plan.

Objections, if any, to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection; and (iv) under Bankruptcy Rule 3020(b)(1), be filed, together with proof of service, with the Bankruptcy Court and served on the following parties: (a) counsel to the Debtor, Bradshaw, Fowler, Proctor & Fairgrave, P.C. (Attn: Jeffrey D. Goetz, Esq.); (b) counsel to the Committee, Michael Best & Friedrich, LLP, 601 Pennsylvania Ave., NW, Suite 700 South, Washington, D.C. 20004 (Attn: Jonathan L. Gold, Esq.); and (c) Office of the United States Trustee, Federal Building, Room 793, 210 Walnut Street, Des Moines, Iowa 50309 (Attn: James L. Snyder, Esq.). The deadline to file an objection as the adequacy of the disclosures in the Disclosure Statement or to confirmation of the Plan has not yet been set.

**UNLESS AN OBJECTION TO THE SUFFICIENCY OF THE DISCLOSURE STATEMENT OR PLAN CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## IV.   OVERVIEW OF THE PLAN

The following is an overview of certain material provisions of the Plan. The following summaries of the material provisions of the Plan do not purport to be complete and are qualified in their entirety by reference to the relevant provisions of the Plan, including all exhibits.

### A.  General Information Concerning Treatment of Claims & Interests

The Plan provides for satisfaction in full of the Allowed Administrative Claims, Allowed Unclassified Priority Claims, Allowed Non-Tax Priority Claims (Class 1), the TBK Bank

Secured Claim (Class 2)[4] and the FCF Secured Claim (Class 3)[5], all of which are Unimpaired and deemed to have accepted the Plan.  Votes on the Plan are not being solicited from Equity Interest Holders (Class 5).  Equity Interest Holders will receive no Distribution under the Plan and, therefore, are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.  Those Creditors holding Allowed General Unsecured Claims (Class 4) shall be entitled to vote to accept or reject the Plan.

The Debtor believes the Plan provides Distributions to all Classes of Claims and Interests that reflect an appropriate resolution of the Claims and Interests, taking into account the differing nature and priority of such Claims and Interests under the Bankruptcy Code and applicable law.

### B.  Summary of Distributions

The following table describes the treatment of Claims and Interests under the Plan.

| Class | Treatment | Impairment & Voting Status | Estimated Allowed Amounts Due | Estimated Recovery % |
|---|---|---|---|---|
| Allowed Administrative Claims (Unclassified) | 100% payment under Liquidating Trust Agreement | Unimpaired<br><br>Not entitled to vote. | Professional Fee Claims of $340,000.00 (for past or future services & expenses).<br><br>Other Administrative Claims of $266,043.00. | 100% |
| Unclassified Priority Claims (Unclassified) | 100% payment, net Assumed Liabilities, under Liquidating Trust Agreement | Unimpaired<br><br>Not entitled to vote. | Internal Revenue Service Claim of $1,250.00. | 100% |
| Class 1 (Non-Tax Priority Claims) | Paid in full by the Liquidating Trust, net of any Assumed Liability according to Liquidating Trust Agreement. | Unimpaired<br><br>Not entitled to vote. | $0 | N/A |
| Class 2 (TBK Bank) | Satisfied in full pursuant to APA and Sale Order; No Distribution under Plan | Unimpaired<br><br>Not entitled to vote. | $0 | N/A |

[4] Class 2 Claim satisfied in full pursuant to the Settlement Agreement.

[5] Class 3 Claim satisfied in full pursuant to the Settlement Agreement.

| Class | Treatment | Impairment & Voting Status | Estimated Allowed Amounts Due | Estimated Recovery % |
|---|---|---|---|---|
| Class 3 (FCF) | Satisfied in full pursuant to Settlement Agreement; No Distribution under Plan | Unimpaired Not entitled to vote. | $0 | N/A |
| Class 4 (General Unsecured Claims) | Pro Rata payment under Liquidating Trust Agreement | Impaired Entitled to vote. | Estimated $10,064,652.00 | 1.3% |
| Class 5 (Equity Interests) | No Distribution under Plan; All Equity Interests Cancelled on Effective Date | Impaired Not entitled to vote. | $0 | N/A |

## V.    GENERAL INFORMATION

### A.    Description & History of the Debtor's Business

Sivyer Steel was founded in 1909 in Milwaukee, Wisconsin. The company expanded in the early 1950's to include a second location in Chicago, Illinois. In 1962, the Chicago location was abandoned to allow for the expansion of the Dan Ryan Expressway, and the facility in Bettendorf, Iowa was purchased. The Milwaukee location was consolidated into the Bettendorf, Iowa location in the early 1970's, and this remains Sivyer Steel's only location. Sivyer Steel produces complex steel castings for a variety of markets, including mining, military, railroad, construction, oil and gas, and energy. Sivyer's key customers include: Komatsu Mining, General Dynamics Land Systems, the Israeli Ministry of Defense, Alstom, Siemens, and LOC Performance Products.

### B.    Events Leading to the Debtor's Filing for Chapter 11 Relief

After the national recession from 2008 through 2009, the steel foundry industry anticipated a period of significant growth. The ownership of Sivyer Steel, in preparation for that growth, invested over $25.0 million in capital improvements between 2010 and 2014, resulting in one of the most capable steel foundries in the U.S. However, the anticipated expansion did not materialize; in fact, just the opposite occurred.

The foundry industry as a whole has historically experienced negative market fluctuations that would normally last anywhere from three to nine months. In late 2014, steel foundries began to see a slowdown in demand across all the major markets. In mining, it was a result of a decline in the purchase of coal. In oil and gas, it was the decline in the price of a barrel of oil. These two markets affected construction equipment and the railroads. Unfortunately, this recession was much more severe and longer-lasting than any previous slowdown.

From late 2014 to late 2016, Sivyer Steel reacted to the falling demand for castings by aggressively downsizing the company. Salary staff positions were cut by nearly 70% from a high of 93 employees to only 26. In addition, the remaining staff took a 10% wage reduction. In 2016, the United Steel Workers union membership voted to also accept a 10% across the board reduction in wages and extended the expiring contract for another year. In October 2017, the union agreed to a new two year contract with no change in wages. The company and the union have maintained a very close and cooperative relationship.

In early 2017, the demand for products produced by the steel foundry industry began to rapidly increase, particularly from the mining segment, the growth of which was partially driven by the improving price of a barrel of oil. In fact, the demand for mining castings increased by over 70% in 2017 compared to 2016. Sivyer was faced with strong demand, an increasing backlog of orders, and not enough working capital to support the growth.

## VI.   THE CHAPTER 11 CASE[6]

As a consequence of the Debtor's commencement of the Case, all actions and proceedings against the Debtor and all acts to obtain property from the Debtor were stayed pursuant to §362 of the Bankruptcy Code. Throughout the Case, the Debtor continued to operate its business and manage its properties as debtor-in-possession under §§1107(a) and 1108 of the Bankruptcy Code.

### A.   Relevant Chapter 11 Filings

#### 1.   *Retention of Professionals.*

The Debtor retained various professionals in the Case with the Bankruptcy Court's approval, including: (i) Bradshaw, Fowler, Proctor, & Fairgrave, P.C. as General Reorganization Counsel; (ii) Turning Point Management as Chief Restructuring Officer and Vice President of Corporate Recovery; (iii) Spencer Fane LLP as Special Conflicts Counsel; (iv) Concord Financial Advisors, LLC as Investment Banker; and (v) Vrakas, S.C. as Special Tax Accountants and Independent Auditors.

#### 2.   *Schedules & Statements.*

The Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs were submitted and filed with the Bankruptcy Court on the Petition Date (the "*Schedules and Statements*"). The meeting of creditors under §341(a) of the Bankruptcy Code was held on April 9, 2018, in Des Moines, Iowa, at which representatives of the Debtor were

---

[6]   Section VI of the Disclosure Statement is only a summary of the Debtor's Case. For a full list of motions and pleadings filed, the Debtor refers parties-in-interest to the Bankruptcy Court's docket in the Case which can be accessed through the Bankruptcy Court's PACER system (account required) at ecf.iasb.uscourts.gov. The docket can also be accessed by requesting a copy of any documents or pleadings from the Debtor's General Reorganization Counsel at no cost.

questioned by creditors, creditors' representatives, and a representative from the Office of the United States Trustee.

Creditors are expressly referred to the Debtor's Schedules and Statements, on file in the Case, as amended, for the purpose of fully informing themselves as to the assets, liabilities, and financial affairs of the Debtor as of the Petition Date.  The Debtor reserves the right to amend its Schedules and Statements as appropriate and necessary.

### 3.   *Motion To Obtain Post-Petition Financing & To Use Cash Collateral.*

On March 14, 2018, as part of its First Day Motion, the Debtor filed an *Emergency and Ex Parte Motion for an Interim Order (I) Authorizing Debtor to Use Cash Collateral, (II) Authorizing Debtor to Obtain Post-Petition Financing, (III) Granting Certain Liens, (IV) Modifying the Automatic Stay, (V) Approving Continuation of Factoring Arrangements, and (VI) Requesting a Final Hearing* (the "*Interim Financing Motion*").  [Dkt. 21.]  On March 28, 2018, the Bankruptcy Court entered an interim order granting the Interim Financing Motion (the "*Interim Financing Order*").  [Dkt. 72.]  The Court subsequently entered a final financing order on April 25, 2018.  [Dkt. 127.]

### 4.   *Motions to Sell the Debtor's Assets.*

On May 11, 2018, the Debtor filed a *Motion for Order (I) Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances, Subject to Higher or Better Offers; (II) Authorizing Assumption and Assignment or Rejection of Leases and Executory Contracts; (III) Approving Bidding Procedures for Sale; and (IV) Scheduling Hearing on Approval of Sale Motion* (the "*Sale Motion*").  [Dkt. 135.]  Amendments to this Motion were filed on June 6, 2018 [Dkt. 152] and June 14, 2018.  [Dkt. 171]. In the Sale Motion, the Debtor sought to sell substantially all of its assets (the "*Assets*") at a "Stalking Horse" Auction, pursuant to Bidding Procedures and an Asset Purchase Agreement.  On June 22, 2018, the Court entered an Order approving the Debtor's Bidding Procedures [Dkt. 181], which provided for the Auction to be commenced by no later than July 2, 2018 and completed by July 3, 2018.

Other than the Stalking Horse Bid, no Qualified Bids for the Debtor's Assets were received by the Bid Deadline (as defined in the Bid Procedures).  As such, an auction was not held, and on July 12, 2018, a sale hearing was held to approve the sale of the Assets to the Stalking Horse Bidder, SSC, pursuant to the APA.  An order was entered on July 23, 2018 approving the sale. [Dkt. 201].

### 5.   *Complaint filed by the Committee Against SSC*

On October 15, 2018, the Committee filed a Complaint against SSC in the Bankruptcy Court, thus commencing Adversary Proceeding No. 18-30057.  The Complaint in the Adversary Proceeding sets forth claims for breach of the APA, tortious interference with a contract, declaratory relief, and turnover.  The Adversary Proceeding

is currently pending before the Bankruptcy Court.  To obtain a copy of the Complaint, please contact Debtor's counsel.

**B.  Committee Participation in the Case**

Under §1102(a) of the Bankruptcy Code, the U.S. Trustee appointed the Committee on March 19, 2018.  The Committee members are: (i) Carpenter Brothers, Inc. (Committee Chair); (ii) ASI International Ltd..; (iii) Core for You; (iv) Canfield & Joseph, Inc.; (v) ACRO Manufacturing; (vi) RIM Logistics, Ltd.; and (vii) Shenyang Jinli Metals & Minerals.

The Committee retained Michael Best & Friedrich, LLP as its lead legal counsel, and Whitfield & Eddy, P.C. as its local legal counsel.  The Committee retained National CRS, LLC as its financial advisor.

Since its appointment, the Committee has taken an active role in the Debtor's Case. Consistent with its duties under §1103 of the Bankruptcy Code, the Committee: (i) consulted with the Debtor on the administration of the Case; (ii) investigated the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of its business, and matters relevant to the Case; and (iii) undertook considerable efforts to ensure a vibrant and successful sale that would allow the Debtor to continue operating and conducting business with its vendors and that provided for the retention of the vast majority of the Debtor's employees.

**C.  Current and Historical Financial Conditions**

The identity and the Debtor's good faith estimates of the fair market value of the Estate's assets as of the Petition Date are in the Debtor's petition, schedules, and statements, as amended, and are incorporated by reference herein.  The Debtor's regular monthly operating reports are available from the Clerk of the Bankruptcy Court, online through Public Access to the Court's Electronic Records ("PACER") (if you have a PACER account), or at no charge by requesting a copy from the Debtor's general reorganization counsel.  The Debtor's financial statements for the 2017 tax year are attached to this Disclosure Statement as Exhibit A and are incorporated herein by reference.

**VII.  FINANCIAL INFORMATION**

**A.  Assets**

The Debtor believes the following assets, each of which will be transferred to the Liquidating Trust no later than seven (7) days after the Effective Date, will be available to fund distributions to Creditors under the Plan and the Liquidating Trust Agreement:

***1.  Cash Held by the Debtor.***

As of November 18, 2019, the Debtor is holding Cash in the approximate amount of $370,000.00.

*2. Accounts Receivable.*

Pursuant to the APA by and between the Debtor and SSC, the majority of the accounts receivable held by the debtor on the Petition Date were sold by the Debtor to SSC. The current balance owed to the Debtor for the accounts receivable that were retained is approximately $243,000.00. These retained accounts receivable are relatively old, and little, if any, payment activity has occurred with regard to them since the Petition Date. Consequently, the Debtor believes significant collection of these accounts receivable by the Liquidating Trustee is not likely. For purposes of the Plan and this Disclosure Statement, the Debtor estimates $36,000.00 , representing approximately 15% of the retained accounts receivable currently outstanding, could  be collected by the Liquidating Trustee. Any money so collected would be distributed by the Liquidating Trustee in accordance with the provisions of the Plan.

*3. Causes of Action.*

*a. Potential Preference Claims.*

Section 547 of the Bankruptcy Code authorizes the Debtor or, in this instance, the Liquidating Trustee to recover from Creditors certain payments made by the Debtor to them within the ninety days preceding the Petition Date. Such payments are referred to in the Bankruptcy Code as "preferences". The requirements for establishing grounds for recovering preferences and the potential defenses to any such preference claim are set forth in detail in §547 of the Bankruptcy Code.

The ability to prove a preference and the merits of any defense to such a claim are difficult to assess in the abstract. The documents related to the parties' transactions, their course of dealing, and several other factors specific to a particular situation will affect the likelihood of a recovery. That said, the Debtor has conducted an extensive analysis of potential preferences by examining and assessing the payments made by the Debtor to Creditors in the ninety days preceding the Petition Date as well as the balances of the accounts receivable both at the Petition Date and at ninety days preceding that date. From this assessment, the Debtor has determined the recovery of potential preferential transfers will not provide a significant source of funds from which to make payments under the Plan. Consequently, for purposes of the Plan, the Debtor has assumed no such funds will be available for distribution.

*b. Litigation Between the Committee and SSC*

On October 15, 2018, the Committee commenced an adversary proceeding against SSC in the Bankruptcy Court (Adversary Proceeding Number 18-30057-als). The complaint filed to commence that litigation, as amended, alleges SSC violated the APA and/or committed certain torts, thereby causing injury and damage to the Debtor in the amount of $450,000.00. Through the adversary proceeding, the Committee seeks to recover the amount in question from SCS. SCS has filed an

answer to the complaint that responds to the allegations therein and asserts certain affirmative defenses.  The case is currently in the pretrial phase.

Litigation is inherently unpredictable, and even after a trial on the merits and the issuance of a ruling or judgment by the trial court, the result might be subject to review by a number of higher courts.  Given the vagaries of litigation, the early stage of the Committee's adversary proceeding against SSC, and the potential for protracted appeals, it is difficult to predict what recovery, if any, Committee might obtain.  However, the Debtor believes the pending litigation will result in a recovery for the Estate not to exceed $450,000.00.

*c. Litigation Between the Debtor and the U.S. Trustee*

Between the date of this Plan and the end of 2019, the Debtor anticipates the commencement of litigation against the U.S. Trustee in the United States Court of Federal Claims in Washington, D.C.  The Debtor has applied to the Bankruptcy Court to approve the employment of counsel to represent it in this anticipated litigation, and the Bankruptcy Court has approved that employment.

The anticipated litigation between the Debtor and the U.S. Trustee arises from the calculation and payment of certain statutory fees due from Chapter 11 debtors (including the Debtor) to the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6).  During the pendency of the Case, the Debtor and the U.S. Trustee had a disagreement regarding the appropriate manner in which such fees should be calculated.  The difference between the parties' positions in the calculation of the fees due totals $42,379.77.  To avoid the filing of a motion to dismiss the Case by the U.S. Trustee, the Debtor paid the disputed amount under protest and reserving its rights to seek a refund of the money in question.

As previously indicated, the Debtor has retained counsel to pursue litigation against the U.S. Trustee's office regarding the propriety of its calculation of administrative fees.  Counsel for the Debtor in this litigation has significant expertise with regard to this issue, and the Debtor anticipates a recovery not to exceed $42,379.77 as a result of this litigation.

## B. Liabilities

The Debtor believes that, as of the Effective Date, it will have the following liabilities:

### 1. Administrative Claims

The Debtor estimates $556,043.00 in Administrative Claims will be outstanding on the Effective Date. Estimated amounts for each subcategory of these Administrative Claims follow.

### a. Professional Fee Claims.

The Debtor's Professionals estimate they will be owed approximately $150,000.00 with respect to accrued, unpaid Professional Fee Claims.

The Committee's Professionals in this Case estimate they will be owed approximately $140,000.00 with respect to accrued, unpaid Professional Fee Claims.

### b. Other Administrative Claims.

The Debtor estimates approximately $266,043.00 is owed for Other Administrative Claims.

### c. Unclassified Priority Claims

Net of Assumed Liabilities, there are Unclassified Priority Claims in the approximate amount of $1,250.00. This amount has been determined by reference to Claims filed to date and the liabilities scheduled by the Debtor, and it is subject to further reconciliation or other adjustment by the Committee or the Liquidating Trustee. To the extent there are any such Claims, they will be paid in full according to the Plan and the Liquidating Trust Agreement.

## 2. Non-Tax Priority Claims (Class 1).

The Debtor does not believe there are any Non-Tax Priority Claims. This amount has been determined by reference to Claims filed to date and the liabilities scheduled by the Debtor, and it is subject to further reconciliation or other adjustment by the Committee or the Liquidating Trustee. To the extent there are any such Claims, they will be paid in full according to the Plan and the Liquidating Trust Agreement.

## 3. TBK Bank Secured Claim (Class 2).

The TBK Bank Secured Claim was satisfied in full pursuant to the APA and Sale Order. The Holder of the Class 2 Claim shall receive no Distribution under the Plan.

## 4. FCF Secured Claim (Class 3).

The FCF Secured Claim was satisfied in full pursuant to the Settlement Agreement. The Class 3 Claim shall receive no distribution under the Plan.

## 5. General Unsecured Claims (Class 4).

According to the Schedules and the statement of financial affairs filed by the Debtor upon the commencement of this Case and as they may have been amended from time to time pursuant to Bankruptcy Rule 1009 and based on the proofs of Claim filed by the General Unsecured Claims Bar Date, General Unsecured Creditors hold approximately $68,617,282.12 in Claims against the Debtor. However, the Debtor believes approximately only $10,780,768.07 in General Unsecured Claims will ultimately be Allowed after the Claim reconciliation process, computation of the Assumed Liabilities, and resolution of Causes of Action. A complete list of all General Unsecured Claims is attached hereto as Exhibit B.

6. *Equity Interest Holders (Class 5).*

This class of Interests consists of the Debtor's Equity Interest Holders and shall receive no Distribution under the Plan.

## VIII. PLAN OF LIQUIDATION

### A. Objectives of the Plan

The primary objectives of the Plan are to: (i) transfer the Debtor's remaining assets to a Liquidating Trust that is charged with liquidating those assets, reconciling Claims, prosecuting Causes of Action for the benefit of Creditors, and making distributions to Holders of Allowed Claims; and (ii) maximize value to all Creditor groups on a fair and equitable basis under the priorities established by the Bankruptcy Code, applicable law, and the Plan.

The Debtor believes the Plan provides Holders of Allowed Claims a greater recovery than they would receive if the Plan is not approved or upon conversion of the Case to a Chapter 7 liquidation.

The statements contained in this Disclosure Statement include summaries of the provisions of the Plan and documents to which the Plan refers. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents the Plan references, and reference is made to the Plan and to such documents (in particular the APA and Sale Order) for the full and complete statement of such terms and provisions.

In the event of any conflict between this Disclosure Statement and the Plan or any other operative document, the terms of the Plan and such other operative document, including the Liquidating Trust Agreement and the APA, are controlling.

### B. Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. A Chapter 11 debtor is authorized to reorganize its business for the benefit of itself, its creditors and its interest holders. Another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of a debtor's assets.

Chapter 11 may also be used to effectuate an orderly liquidation of a debtor's business and assets. In contrast to a Chapter 7 liquidation, in which a trustee is appointed to conduct the liquidation and wind down of the estate, in a Chapter 11 liquidation, the debtor or a designee of the debtor (such as the Liquidating Trustee) remains in possession of the estate.

The commencement of a Chapter 11 case creates an estate comprised of all of the legal and equitable interests of the debtor in any and all property, real and personal, tangible or intangible, as of the petition date. The Bankruptcy Code contemplates that a debtor, through its pre-bankruptcy management, will continue to operate its business in the ordinary course and remain in possession of its property during the case while it seeks to negotiate and implement a plan. Any activities outside the ordinary course of the debtor's business must be approved by the bankruptcy court before they are undertaken.

The consummation of a plan is the principal objective of a Chapter 11 case. A plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon the debtor, any person or entity acquiring property under the plan, and any creditor of or equity interest holder in the debtor, whether or not such creditor or equity interest holder: (i) is impaired under or has accepted the plan; or (ii) receives or retains any property under the plan. Subject to certain limited exceptions, and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debts that arose before the date of confirmation of the plan and substitutes the obligations specified under the confirmed plan for such debts. The confirmation order also terminates all rights and interests of equity interest holders.

## C.  Means of Implementing the Plan

### 1.  *Vesting of Assets.*

Within seven (7) days after the Effective Date or as provided in the Confirmation Order, all Assets of the Estate, including Avoidance Actions, shall be assigned to the Liquidating Trust. These assets include all Cash in the possession of the Debtor and all rights of the Debtor under the Plan, the Confirmation Order, and all other orders entered by the Bankruptcy Court in this Case on or before the Effective Date. The assets shall also include assets excluded from the sale under the APA, as well as the confirmation and post-confirmation funds. For the avoidance of doubt, all property held for Distribution under the Plan shall be held solely by the Liquidating Trust in trust for the beneficiaries of the Liquidating Trust and shall not be deemed to be property of the Debtor.

Nothing in the Plan shall preclude payment from any assets held by the Liquidating Trust of: (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Effective Date; and (ii) the Trustee's Expenses according to the Plan and the Liquidating Trust Agreement. The Debtor is authorized and directed to take any steps necessary to confirm the transfer and contribution of its property to the Liquidating Trust, subject to oversight from the Liquidating Trustee.

### 2.  *Trust Asset Administration.*

The Liquidating Trustee shall administer the Liquidating Trust Assets under the Plan

and the Liquidating Trust Agreement beginning on the Effective Date.

The Liquidating Trustee shall be responsible for liquidating the Liquidating Trust Assets, making Distributions of the Net Proceeds to the beneficiaries of the Liquidating Trust, and all other activities typically related to trust administration.  The Liquidating Trustee shall also be responsible for pursuing the Avoidance Actions and other Causes of Action and for all other activities typically related to trust administration.

The Liquidating Trustee shall file all necessary tax filings, statements, and reports for the Debtor.

### 3.   Wind Down.

As soon as the Liquidating Trustee determines it is practicable, but not later than the completion of the Liquidating Trustee's functions under the Liquidating Trust Agreement, the Liquidating Trustee will provide for the orderly wind down or dissolution of the Debtor.  After the wind down, the Liquidating Trustee shall continue to have standing to assert claims or pursue matters on behalf of the Debtor to the extent necessary to preserve, protect, and liquidate the Liquidating Trust Assets or that are otherwise necessary to administer the Liquidating Trust.

### 4.   Conditions to Occurrence of the Effective Date.

The following are conditions precedent to the occurrence of the Effective Date:  (i) entry of the Confirmation Order by the Bankruptcy Court, which shall not have been stayed, and, if it is the subject of any appeal, reconsideration, or other review, no stay of the Confirmation Order shall be in effect; (ii) execution and delivery of the Liquidating Trust Agreement, in form and substance satisfactory to the Committee, including the occurrence of all conditions precedent to the effectiveness of the Liquidating Trust Agreement; (iii) delivery or effectuation of all other documents or agreements necessary to consummate the Plan; and (iv) appointment of the Liquidating Trustee by the Debtor and Committee upon notice to the Bankruptcy Court.

Upon the satisfaction of these conditions to the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court and serve, in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Plan, a notice of the Effective Date.

### 5.   Administrative Claims Bar Date.

All Persons requesting payment of Administrative Claims shall file a proof of Claim with the Bankruptcy Court no later than the Administrative Claims Bar Date, which shall be thirty (30) days after the Confirmation Date.  The Administrative Claims Bar Date shall not apply to Professionals requesting payment of Professional Fee Claims who shall be entitled to file an application for allowance of such Claims until not later than sixty (60) days after the Effective Date.  Objections to such applications for payment (whether

by Professionals requesting payment of Professional Fee Claims or Persons requesting payment of Administrative Claims), if any, must be written, filed with the Bankruptcy Court, and served on the applicable parties in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Plan within twenty-one (21) days after such application or Claim is filed.

**6. *Termination of the Creditors' Committee.***

The existence of the Committee shall automatically terminate, and the Committee shall automatically be dissolved, on the Effective Date. Upon termination and dissolution, members of the Committee shall be deemed to be released from their duties and responsibilities with regard to the Case and the Plan and its implementation. Further, on the Effective Date, the retention or employment of the Committee's counsel shall terminate except for the performance by the Committee's counsel of ministerial duties or any duties imposed by the Plan including, but not limited to, filing applications for allowance and payment of Professional Fee Claims.

**7. *Case Administration.***

Beginning on the Effective Date and continuing through the date a final decree closing the Case is entered pursuant to §350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidating Trustee shall possess the rights of a party in interest under §1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Case.

For all matters arising in, arising under, or related to the Case, the Liquidating Trustee shall:

  (i)  have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction;

  (ii)  have the right to obtain records of, or related to, the Debtor (including bank statements and cancelled checks);

  (iii)  be entitled to notice of and the opportunity to participate as a party in interest in hearings held by the Bankruptcy Court or other courts of competent jurisdiction;

  (iv)  be entitled to participate as a party in interest in any and all matters brought before the Bankruptcy Court, including adversary proceedings;

  (v)  have exclusive standing, including derivative standing, to pursue Causes of Action on behalf of the Debtor;

  (vi)  be entitled to liquidate the Liquidating Trust Assets without further Bankruptcy Court approval;

(vii)  be entitled to request that the Bankruptcy Court to enter a final decree closing the Case; and

(viii)  be entitled to receive notice of the filing of any and all pleadings, motions, applications, and other papers of every kind and nature whatsoever with the Bankruptcy Court in this Case and to have such pleadings, motions, applications, and papers served upon him.

### 8.  Filing Additional Documents.

On or before the Confirmation Date of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including the final Liquidating Trust Agreement.

### 9.  Maintenance and Preservation of Causes of Action.

The Liquidating Trustee shall retain, and may exclusively enforce, any Claims, rights, or Causes of Action, including Retained Causes of Action, and commence, pursue, and settle the Causes of Action according to the Plan.  The Liquidating Trustee shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Claims, rights, and Causes of Action, including retained Causes of Action, without the consent or approval of any third party and without any further order of the Bankruptcy Court.

### 10. Liquidating Trustee's Professionals.

Upon appointment, the Liquidating Trustee may, subject to the Liquidating Trust Agreement, retain such Professionals as the Liquidating Trustee may deem necessary, without seeking approval from any court or other party.  Professionals may include legal counsel, accountants, experts, advisors, consultants, investigators, appraisers, real estate brokers, auctioneers and other Professionals whose retention and employment the Liquidating Trustee deems appropriate.  Professionals do not need to be "disinterested" as that term is defined by the Bankruptcy Code and may include the attorneys and financial advisors employed by any party in the Case.  The Liquidating Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity. The Liquidating Trustee's retention of a Professional shall not be deemed to pose any conflict of interest, and no conflict shall exist by virtue of the filing of applications by any such Professionals employed by the Liquidating Trustee for allowance of Administrative Claims according to the APA, the Liquidating Trust Agreement, or this Plan.

The Liquidating Trustee's Professionals' fees shall be paid from the Liquidating Trust.

The Liquidating Trustee and its Professionals shall submit invoices for the payment of fees and reimbursement of expenses on a monthly basis (subsequently referred to as "Trust Invoices").  Trust Invoices may be paid with the approval of the Bankruptcy Court.

## 11. Injunction and Discharge.

On and after the Confirmation Date, all Persons who have held, who now hold, or who may have held or may now hold Liens, Claims, or Interests in or against the Debtor are permanently enjoined from enforcing, levying, attaching (including any pre-judgment attachment), collecting, or otherwise recovering by any manner or means any such Liens, Claims, or Interests, including any judgment, award, decree, order, or claim arising from, concerning, or relating, in any manner whatsoever, to any such Liens, Claims, or Interests against or from: (i) the Assets of the Estate; (ii) any current or former officers, directors, or shareholders of the Debtor; (iii) the Liquidating Trust and the Liquidating Trustee; (iv) and any and all successors and assigns of any of the foregoing.

Since the Plan provides for the liquidation of all or substantially all of the property of the Estate, since the Debtor will not engage in business after consummation of the Plan, and since the Debtor would otherwise be denied a discharge under Bankruptcy Code §727(a)(1) if the Case were a case under Chapter 7, the provisions of Bankruptcy Code §1141(d)(3) are applicable.

## 12. Minimum Distributions.

The Liquidating Trustee shall not be required to make a Distribution to a Creditor unless the amount of the Distribution is twenty-five dollars ($25.00) or greater.

## 13. Term of Bankruptcy Injunction or Stays.

All injunctions or stays provided for in the Case under §§105 or 362 of the Bankruptcy Code or that are otherwise in existence on the Effective Date shall remain in full force and effect through the termination of the Liquidating Trust.

## 14. Exculpation & Limitation of Liability.

Neither the Debtor, the Liquidating Trustee, their respective present and former members, officers, directors, shareholders, subsidiaries, affiliates, employees, advisors, attorneys, or agents acting in such capacity, nor any of their successors or assigns shall have or incur any liability to, or be subject to any right of action by, any Person for any act or omission in connection with, relating to, or arising out of, the Case, the pursuit of confirmation of the Plan, or the Plan's implementation, except in a case of their fraud, willful misconduct, or gross negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 15. Semi-Annual Reports.

The Liquidating Trustee shall periodically prepare and file with the Bankruptcy Court certain reports (each subsequently referred to as a "*Semi-Annual Report*") containing:

(a) a description of all Distributions to Beneficiaries during the period covered by the Semi-Annual Report;

(b) a summary of the Liquidating Trust deposits and disbursements during the period covered by such Semi-Annual Report; and

(c) a summary of the Liquidating Trust Assets.

Following the Effective Date, the Liquidating Trustee shall file the Semi-Annual Reports with the Bankruptcy Court within thirty (30) days after June 30th and December 31st of each calendar year during the term of this Liquidating Trust Agreement. The first Semi-Annual Report shall be prepared, provided, and filed within thirty (30) days after June 30, 2020.

### 16. Closing of the Case.

The Case shall not be closed, or if closed, shall remain subject to reopening under §350 of the Bankruptcy Code until the Liquidating Trust Assets have been fully administered.

## IX.   STATUS AND EXISTENCE OF EXECUTORY CONTRACTS & OTHER LITIGATION

### A.  Executory Contracts

### 1.  Assumed Executory Contracts & Unexpired Leases.

The Debtor is not aware of any post-petition executory contracts or unexpired leases to which it is a party. "Assumption" means the Debtor has elected to continue to perform the obligations under such executory contracts or unexpired leases and to cure defaults, if any, of the type that must be cured under the Bankruptcy Code. "Assumption and assignment" means the assumption of an executory contract or unexpired lease followed by its assignment to another party who has agreed to fulfill the obligations under such contract or lease.

If you object to the assumption or assumption and assignment of your executory contract or unexpired lease, to the proposed cure of any defaults, or to the adequacy of assurance of performance, unless the Bankruptcy Court has set an earlier time, you must file and serve, in accordance with the Bankruptcy Code and the Bankruptcy Rules, your objection to the Plan within the deadline established for objecting to the confirmation of the Plan.

The pre-petition executory contracts listed on Exhibit C to this Disclosure Statement

have been assumed and assigned to SSC. Pursuant to the APA, SSC agreed to pay the assumption cure costs up to the Assumption Limit (as defined in the APA). The Debtor paid the remaining cure cost amount due post-closing. The Debtor does not believe there is any remaining liability owing for cure costs.

### 2. *Rejected Executory Contracts & Unexpired Leases.*

The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases that: (a) are not expressly assumed under the Plan; or (b) were not assumed pursuant to a separate motion filed before the Effective Date of the Plan. You should consult your attorney or other advisor if you have a question regarding your particular unexpired contract or lease. If you object to the rejection of your executory contract or unexpired lease, you must file an objection to the confirmation of the Plan within the deadline established for doing so.

A proof of Claim arising from the rejection of an executory contract or unexpired lease pursuant to §6.1 of the Plan must be filed no later than thirty (30) days after the Confirmation. Unless the Bankruptcy Court orders otherwise, any Claim based on the rejection of a contract or lease will be barred if the proof of Claim is not timely filed.

## B. Litigation

### 1. *Potential Preference Litigation.*

The Debtor has conducted an extensive analysis of potential preferences by examining and assessing the payments made by the Debtor to Creditors in the ninety days preceding the Petition Date as well as the balances of the accounts receivable both at the Petition Date and at ninety days preceding that date. From this assessment, the Debtor has determined the recovery of potential preferential transfers will not provide a significant source of funds from which to make payments under the Plan. Consequently, for purposes of the Plan, the Debtor has assumed no such funds will be available for distribution.

### 2. *Other Potential Litigation.*

The Liquidating Trustee will have authority to investigate and bring additional claims against Persons who might be liable on account of such claims based on theories of: (i) breaches of fiduciary duties (both before and after the Petition Date); (ii) aiding and abetting breaches of fiduciary duties; (iii) piercing the corporate veil; (iv) conversion; (v) fraud; (vi) negligence; (vii) negligent misrepresentation; (viii) waste of corporate assets; and (ix) equitable subordination of Claims. The proceeds of any of these litigation claims will be distributed under the Plan.

The above list of potential claims against Persons who might be liable on account of such claims is not exhaustive, and any failure to list in this Disclosure Statement a

specific Cause of Action or Person who might be liable on account of such claims is because such Cause of Action or Person is not known to the Debtor or the Committee at this time. On behalf of the Debtor and the Estate, the Debtor preserves for the Liquidating Trustee any and all rights to any Cause of Action that may be identified after the Effective Date. The recoveries, if any, from any litigation brought by the Liquidating Trustee will depend on many factors that which cannot be predicted at this time. The Liquidating Trustee may elect not to pursue certain Causes of Action or any of them (including Avoidance Actions) if the Liquidating Trustee pursuit of such Causes of Action not to be in the best interest of the Estate or the Liquidating Trust.

Except as specifically provided in this Disclosure Statement or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims, or Causes of Action (including any Avoidance Actions) the Liquidating Trustee may choose to assert on behalf of the Estate or the Liquidating Trust pursuant to any provision of the Bankruptcy Code or any applicable nonbankruptcy law.

All Causes of Action, other than those expressly settled or released in the Plan, shall survive confirmation, and the commencement of prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. The Liquidating Trustee's right to commence and prosecute Causes of Action (including Avoidance Actions) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No defendant party to any Cause of Action (including an Avoidance Action) shall be entitled to assert any defense based, on whole or in part, on confirmation of the Plan, and confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of Causes of Action (including Avoidance Actions).

### 3. *Potential Unknown Claims.*

The Liquidating Trustee may have additional Causes of Action against Persons who are unknown at this time. The Liquidating Trustee is empowered to investigate the Debtor's relationship with third parties for the purpose of evaluating potential additional litigation claims. The proceeds of any litigation against third parties or any other beneficial result from the settlement of such litigation will be subject to distribution under the Plan and the Liquidating Trust Agreement.

### C. Objections to Claims

A General Unsecured Claims Bar Date, Administrative Claims Bar Date and Governmental Claims Bar Date have been established in the Case or will be established pursuant to the terms of the Plan. The Debtor believes objections to certain Claims will

be warranted, and counsel for the Liquidating Trustee is authorized to file and pursue such objections with the assistance of the Liquidating Trustee's professionals.

## X.    CONFIRMATION & CONSUMMATION PROCEDURE

The Bankruptcy Court may confirm the Plan only if it determines that the Plan complies with the requirements of Chapter 11, including, among other things, that: (i) the Plan has properly classified Claims and Interests; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Debtor has complied with applicable provisions of the Bankruptcy Code; (iv) the Debtor has proposed the Plan in good faith and not by any means forbidden by law; (v) the Plan has been accepted by the requisite votes of all Classes of Creditors (except to the extent that "cramdown" is available under §1129(b) of the Bankruptcy Code); (vi) the Plan is in the "best interests" of all Holders of Claims or Interests in an Impaired Class; (vii) the Plan is "feasible" in that confirmation of the Plan is not likely to be followed by the liquidation or need for further restructuring of the Debtor, unless the Plan contemplates liquidation; and (viii) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid, or the Plan provides for the payment of such fees on the Confirmation Date.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

### A.  Solicitation of Votes

Under the Bankruptcy Code, only classes of claims and interests that are impaired under a plan are entitled to vote to accept or reject that plan.  A class is impaired if the legal, equitable, or contractual rights to which the holders of claims or interests are entitled are modified other than by curing defaults and reinstating the debt.  Under §§1126(f) and (g) of the Bankruptcy Code, classes of claims and interests that are not impaired are conclusively presumed to have accepted the plan and are not entitled to vote on a plan.  Classes of claims and interests whose holders will receive or retain no property under the plan are deemed to have rejected the plan and are not entitled to vote on the plan.  Creditors who hold disputed or disallowed claims are not entitled to vote to accept or reject the plan.

Under the Plan, the Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.  Pursuant to the Bankruptcy Code, all other Classes of Claims or Interests are deemed to have either accepted or rejected the Plan.  This Disclosure Statement and an appropriate ballot are being distributed to all Holders of Claims who are entitled to vote on the Plan.

Under the Bankruptcy Code, a class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the Claims who properly voted in that class vote to accept the Plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or according to the provisions of the Bankruptcy Code.

Any ballot that is properly completed, executed, and timely returned to the Debtor but that either does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will be deemed to be a vote to accept the Plan. Whenever a Creditor casts more than one ballot voting the same Claim before the voting deadline, the last ballot received before the voting deadline is deemed to reflect the voter's intent and shall, therefore, supersede any prior ballots. Creditors must vote all their Claims either to accept or reject the Plan and may not split their vote; consequently, a ballot that partially accepts and partially rejects the Plan will not be counted.

## B.  The Combined Hearing on Adequacy of Disclosure Statement & Confirmation of the Plan

As of the filing of the Plan, the Bankruptcy Court has not yet scheduled a combined hearing on approval of the Disclosure Statement and confirmation of the Plan. The Debtor has filed a motion asking the Bankruptcy Court to issue an "Order and Notice of Deadlines and Hearing on First Amended Joint Combined Disclosure Statement and Plan of Liquidation", a copy of which will be enclosed with the Plan when it is mailed to you.

At the combined hearing, the Bankruptcy Court will consider, on a final basis, whether the Disclosure Statement contains "adequate information" and whether the Plan satisfies the various requirements of §1129 of the Bankruptcy Code. Before the hearing, the Debtor will submit a report to the Bankruptcy Court reflecting the votes received with respect to the acceptance or rejection of the Plan by the parties entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. Any objection to confirmation of the Plan must be made in writing, must be filed with the Bankruptcy Court, and must be served on all required parties on or before the objection deadline. The objection deadline is the deadline for objecting to the confirmation of the Plan, a date that has not yet been by the Bankruptcy Court. Unless an objection to confirmation is timely served and filed, it may not be considered by the Bankruptcy Court.

## C.  Confirmation

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all the applicable requirements of §1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan: (i) has been accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class; (ii) is feasible; and (iii) is

in the "best interests" of creditors and stockholders that are impaired under the plan and that vote, or are deemed to have voted, to reject the plan.

### 1. *Unfair Discrimination & Fair & Equitable Tests*

To obtain confirmation of a plan over the objection of a class of claims or interests that rejects such plan, it must be demonstrated that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to each such non-accepting class. In order for a plan to be found to be "fair and equitable" and thus subject to confirmation by "cramdown" under §1129(b) of the Bankruptcy Code, the Debtor must demonstrate:

    a. *For a Class of Unsecured Creditors:*

That either: (i) each impaired unsecured creditor receives or retains, under the plan, property of a value equal to the amount of its allowed claim; or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

    b. *For a Class of Interests:*

That either: (i) each holder of an interest will receive or retain, under the plan, property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest; or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

As described above, Holders of Class 5 Equity Interests are presumed, under §1126(g) of the Bankruptcy Code, to have rejected the Plan. The Debtor requests confirmation of the Plan under §1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by the Equity Interests. In view of the terms of the Plan, the Debtor believes the Plan may be confirmed over the dissent of Class 5 pursuant to the above-described "cramdown" provisions. The Debtor believes the Plan's treatment of the Equity Interests in Class 4 satisfies the "fair and equitable" test because (i) there is no Class junior to that non-accepting Class that will receive or retain any property under the Plan; and (ii) since Class 4, whose Claims have priority over the Interests classified in Class 5 to the extent Allowed, are not being paid in full under the terms of the Plan, nor will they further will share Pro Rata in the Net Proceeds of the Liquidating Trust Assets under the Plan. In addition, the Debtor does not believe the Plan unfairly discriminates against Class 5.

### 2. *Best Interests Test & Liquidation Analysis*

With respect to each impaired class of claims and interests, confirmation of a plan requires that each holder of a claim or interest either: (i) accept the plan; or (ii) receive or retain under the plan property of a value, as of the Effective date, that is not less than the

value such holder would receive or retain if the debtor was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes Holders of Impaired Claims and Interests in each Impaired Class under the Plan would receive significantly less under a Chapter 7 liquidation than they would under the Plan. This difference is represented in the liquidation analysis (the "*Liquidation Analysis*") attached to this Disclosure Statement as Exhibit D.

To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor was liquidated under Chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from such debtor's assets in a Chapter 7 case. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 trustee.

The money available to unsecured creditors in a Chapter 7 liquidation would first be reduced by the claims of secured creditors to the extent of the value of their collateral. In addition, the money available to unsecured creditors would be reduced by the costs and expenses of liquidation and by other administrative expenses and costs of the bankruptcy case. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as that of counsel and other professionals retained by the trustee, asset disposition expenses, and all unpaid expenses incurred until the liquidation is completed.

The Debtor believes the Plan meets the "best interests of creditors" test set forth in §1129(a)(7) of the Bankruptcy Code. The Debtor believes the members of each Impaired Class will receive significantly greater value under the Plan than they would in a Chapter 7 liquidation proceeding. The Debtor's Liquidation Analysis, attached to this Disclosure Statement as Exhibit D and incorporated herein by reference, demonstrates that in the event of liquidation as described therein, Holders of Unsecured Claims are not likely to receive any distribution on their Claims, and Holders of the Debtor's Equity Interests would receive no Distribution. The Plan will provide a significantly greater recovery than under Chapter 7 because: (i) the Debtor believes the Liquidating Trustee will bring value to the Estate by reconciling overstated and invalid Claims and by assuring recoveries from Causes of Action; and (ii) by avoiding the additional expenses associated with conversion to a Chapter 7 case.

With respect to item (i) above, though it is possible a Chapter 7 trustee would vigorously pursue objections to Claims and Causes of Action, the Debtor submits such a result is highly speculative in that the pursuit of such litigation is not a precondition to the appointment of a Chapter 7 trustee; consequently, a Chapter 7 trustee may ultimately choose not to challenge the Claims or to bring Causes of Action.

With respect to item (ii) above, the Debtor submits that one significant distinction between the Plan and the conversion of the Case to a case under Chapter 7 are the substantial Chapter 7 administrative costs that would be occasioned by such a conversion. Under §326 of the Bankruptcy Code, the statutory Chapter 7 trustee fee (the "*Chapter 7 Trustee Fee*") shall not exceed 25% of the first $5,000 disbursed, 10% on any amount disbursed in excess of $5,000 but not in excess of $50,000, 5% on any amount disbursed in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation, not to exceed 3%, on any amounts in excess of $1,000,000. Any such Chapter 7 Trustee Fee will directly reduce any recovery for Creditors.

In addition, like the Liquidating Trustee, a Chapter 7 trustee would likely retain Professionals. The Chapter 7 trustee and the trustee's Professionals, however, may not be familiar with the Debtor's operations and this Case. Accordingly, the Chapter 7 trustee and the trustee's Professionals may have to devote considerable time reviewing the Debtor's books and records and the events of this Case that occurred before the conversion to Chapter 7. Given this reality, the Debtor estimates the fees of a Chapter 7 trustee's Professionals would exceed the fees of the Liquidating Trustee's Professionals.

The rates of those Professionals retained by the Chapter 7 trustee on one hand and the Liquidating Trustee on the other may vary. For instance, one group of Professionals may have higher rates than a group of other Professionals. Assuming both groups of Professionals are equally efficient in their approach and effectiveness in the results obtained, this factor may increase the cost of administration.[7]

The Debtor submits the Plan will provide a recovery greater than the amount each Creditor would receive under a Chapter 7 liquidation. The Liquidating Trust – which will be created if the Plan is confirmed – will appoint the Liquidating Trustee, and it is contemplated that the Liquidating Trustee will earn reasonable fees. The Liquidating Trustee will retain Professionals, but, given the added expense of the Chapter 7 trustee's Professionals to become generally familiar with the Debtor's Estate, the Debtor submits the fees of any Professionals of the Liquidating Trustee would be less than the professional fees incurred by a Chapter 7 trustee. Accordingly, the Debtor believes the Plan meets the "best interests" test.

### D. Conclusion

For the foregoing reasons, the Debtor submits that the Plan, as proposed, meets each of the requirements for confirmation under §1129 of the Bankruptcy Code.

---

[7] Given that the Professional groups have not been – and, in fact, cannot be – identified at this time, it remains impossible to fully evaluate this issue for purposes of voting on the Plan.

## XI.    TAX CONSEQUENCES

U.S. TREASURY CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH U.S. TREASURY CIRCULAR 230, EACH HOLDER OF A CLAIM OR AN INTEREST IS HEREBY NOTIFIED THAT: (I) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER OF A CLAIM OR AN INTEREST FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER OF A CLAIM OR AN INTEREST UNDER TITLE 26 OF THE UNITED STATES CODE (THE "*TAX CODE*"); (II) SUCH DISCUSSION IS FOR THE PURPOSE OF SOLICITATION OF VOTES ACCEPTING THE PLAN; AND (III) A HOLDER OF A CLAIM OR AN INTEREST SHOULD SEEK ADVICE BASED UPON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

### A. General

The following discussion summarizes certain anticipated U.S. federal income tax consequences of the transactions proposed in the Plan for the Debtor and for the Holders of Claims and Interests.  The summary is provided for information purposes only and is based on the Tax Code, the Treasury regulations promulgated thereunder, judicial authority, and current administrative rulings and practice, all as in effect as of the date hereof and all of which are subject to change, possibly with retroactive effects that could adversely affect the federal income tax consequences described below.

The summary does not address all aspects of federal income taxation that may be relevant to a particular Holder of a Claim in light of its particular facts and circumstances or to certain types of Holders of Claims subject to special treatment under the Tax Code (for example, non-U.S. taxpayers, financial institutions, broker-dealers, life insurance companies and tax-exempt organizations).  The summary also does not discuss any aspects of state, local or foreign tax consequences.

In addition, a substantial amount of time may elapse between the Confirmation Date of the Plan and the receipt of a final distribution under the Plan and the Liquidating Trust Agreement.  Events subsequent to the date of this Disclosure Statement, such as additional tax legislation, court decisions, or administrative changes, could affect the federal income tax

consequences of the Plan and the transactions contemplated thereunder.  The Debtor will not seek a ruling from the IRS, and has not sought the opinion of counsel, with respect to any of the tax aspects of the Plan.  Accordingly, each Holder of a Claim or Interest is strongly urged to consult with its own tax advisor regarding the federal, state, local, and foreign tax consequences of the Plan to such holder.

**B. Federal Income Tax Consequences to the Debtor**

*1. Overview of Current Tax Year Position & NOLs.*

In general, although the Debtor is still analyzing its results from operations, the Debtor expects to have substantial current year losses and net operating loss carryforwards ("*NOLs*").  As a result of these NOLs and the exclusion from taxation of any cancellation of indebtedness ("*COD*") income in connection with a bankruptcy case, the Debtor does not expect to incur any substantial tax liability as a result of implementation of the Plan.

Moreover, the NOLs will reduce or offset income from the sale of the Debtor's assets.  The Debtor is not able to predict whether NOLs will remain following application against COD income and amounts realized from the sale of substantially all of its assets, and whether any such NOLs may be monetized.  The Liquidating Trustee shall determine whether the Estate can monetize the value of the remaining NOLs for distribution to Creditors under the Plan and the Liquidating Trust Agreement.

*2. Cancellation of Indebtedness.*

Under the Plan, the Debtor's outstanding indebtedness will be satisfied in exchange for Cash.  The satisfaction of a debt obligation for an amount of Cash and other property having a fair market value less than the debt obligation generally gives rise to COD income to a debtor.

However, with the exception noted below, the Debtor will not recognize COD income because the debt discharge occurs in a bankruptcy case.  The Debtor will instead, to the extent available, reduce its tax attributes to the extent of its COD income in the following order: (i) NOLs; (ii) general business credit carryforwards; (iii) minimum tax credit carryforwards; (iv) capital loss carryforwards; and (v) the tax basis of the Debtor's depreciable and non-depreciable assets (but not below the amount of its liabilities immediately after the discharge).

The Debtor may elect to alter the preceding order of attribute reduction and, instead, first reduce the tax basis of its depreciable assets.  The reduction in tax attributes occurs only after the tax for the year of the debt discharge has been determined (i.e., such attributes may be available to offset taxable income that accrues between the date of discharge and the end of the Debtor's tax year).  The Debtor does not recognize any COD

income that exceeds the amount of available tax attributes, and such excess COD income has no other U.S. federal income tax effect.

## C. Federal Income Tax Consequences to Holders of Allowed Claims

The federal income tax consequences of the implementation of the Plan to Holders of Allowed Claims will depend on, among other things, the consideration to be received by the Holder, whether the Holder reports income on the accrual or cash method, whether the Holder receives Distributions under the Plan in more than one taxable year, whether the Holder's Claim is an Allowed Claim or a Disputed Claim on the Effective Date and whether the Holder has taken a bad debt deduction or a worthless security deduction with respect to its Claim.

### 1. Recognition of Gain or Loss.

In general, a Holder of an Allowed Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the Holder's tax basis in the Claim.  Any gain or loss recognized in the exchange may be long term or short term capital gain or loss or ordinary income or loss, depending upon the nature of the Allowed Claim and the Holder, the length of time the Holder held the Claim and whether the Claim was acquired at a market discount.  If the Holder realizes a capital loss, the Holder's deduction of the loss may be subject to limitation.  The Holder's tax basis for any property received under the Plan generally will equal the amount realized.  The Holder's amount realized generally will equal the sum of the Cash and the fair market value of any other property received by the Holder under the Plan on the Effective Date or a subsequent Distribution date, less the amount (if any) treated as interest, as discussed below.

### 2. Post-Effective Date Cash Distributions.

Because certain Holders of Allowed Claims, including Disputed Claims that ultimately become Allowed Claims, may receive Cash Distributions after the Effective Date, the imputed interest provisions of the Tax Code may apply and cause a portion of the subsequent Distributions to be treated as interest.  Additionally, because Holders may receive Distributions with respect to an Allowed Claim in a taxable year or years following the year of the initial Distribution, any loss and a portion of any gain realized by the Holder may be deferred.  All Holders of Allowed Claims are urged to consult their tax advisors regarding the possible application of (or ability to elect out of) the "installment method" of reporting with respect to their Claims.

### 3. Receipt of Interest.

Holders of Allowed Claims will recognize ordinary income to the extent that they receive Cash or property, including beneficial interests in the Liquidating Trust that is allocable to accrued but unpaid interest that the Holder has not yet included in its income.

If an Allowed Claim includes interest, and if the Holder receives less than the amount of the Allowed Claim under the Plan, the Holder must allocate the Plan consideration between principal and interest. Holders of Allowed Claims are strongly urged to consult their own tax advisors in this regard. If the Plan consideration allocable to interest with respect to an Allowed Claim is less than the amount that the Holder has previously included as interest income, the previously included but unpaid interest may be deducted, generally at a loss.

### 4. *Bad Debt or Worthless Securities Deduction.*

A Holder who receives in respect of an Allowed Claim an amount less than the Holder's tax basis in the Claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under §166(a) of the Tax Code or a worthless securities deduction under §165(g) of the Tax Code. The rules governing the character, timing, and amount of bad debt and worthless securities deductions place considerable emphasis on the facts and circumstances of the Holder, the obligor, and the instrument with respect to which a deduction is claimed. Holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

## D. Treatment of the Liquidating Trust & Beneficiaries

The Liquidating Trust is intended to be treated for U.S. federal income tax purposes: (i) in part as a liquidating trust within the meaning of §301.7701-4(d) of the U.S. Treasury Regulations; and (ii) in part as one or more disputed claims or other reserves taxed either as discrete trusts under §641, *et seq.*, of the Tax Code or as disputed ownership funds under §1.468B-9(b)(1) of the U.S. Treasury Regulations, as determined by the Liquidating Trustee in the manner specified in the Liquidating Trust Agreement. The remainder of this §XI.D. assumes this treatment is correct. If the IRS succeeds in requiring a different characterization of the Liquidating Trust, the Liquidating Trust could be subject to tax on all of its net income and gains, with the result that the amounts received by holders of Allowed Claims could be reduced.

### 1. *Liquidating Trust.*

Except as discussed in §XI(D)(2) below (Disputed Claims and Other Reserves), the Liquidating Trust will not be treated as a separate entity for U.S. federal income tax purposes. Instead, the Holders of "beneficial interests" in the Liquidating Trust will be treated as owning their respective Pro Rata shares of the applicable Liquidating Trust Assets, subject to any liabilities of the Liquidating Trust itself. Holders of "beneficial interests" in the Liquidating Trust will include all Holders of Allowed Claims that are entitled to receive a Distribution from the Liquidating Trust under the Plan.

For U.S. federal income tax purposes, the transfer of the Liquidating Trust Assets (to the extent not distributed to Holders of Allowed Claims as of the Effective Date) to the Liquidating Trust will be treated as a transfer of the Liquidating Trust Assets from the Debtor to the Holders of Allowed Claims, subject to any liabilities of the Debtor or the Liquidating Trust payable from the proceeds of such assets, followed by such Holders' transfer of such assets (subject to such liabilities) to the Liquidating Trust in exchange for their respective beneficial interests in the Liquidating Trust. Thus, each Holder of an Allowed Claim on the Effective Date should be treated as transferring its Claim to the Debtor in exchange for the Holder's Pro Rata share of the applicable Liquidating Trust Assets (subject to any liabilities of the Liquidating Trust) followed by the Holder's transfer of such assets (subject to applicable liabilities) to the Liquidating Trust. The "applicable Liquidating Trust Assets" are the Liquidating Trust Assets (or the proceeds thereof) from which a Holder of an Allowed Claim is entitled to a Distribution under the Plan. The Holder should recognize gain or loss equal to the difference between the fair market value of the applicable Liquidating Trust Assets (subject to any liabilities) and the Holder's adjusted basis in its Allowed Claim. The tax basis of the applicable Liquidating Trust Assets deemed received in the exchange will equal the amount realized by the Holder and the holding period for such assets will begin on the day following the exchange. For the avoidance of doubt, the holders of Allowed Claims are not intended to be treated for federal income tax purposes as receiving Liquidating Trust Assets that are contributed to any Disputed Claims reserve until such time as such Disputed Claims reserve makes Distributions, in which case (and at which time) the Holders of Allowed Claims are intended to be treated as receiving the Distributions actually received from the Disputed Claims reserve, if any.

Each Holder of an Allowed Claim will be required to include in its annual income, and pay tax to the extent due on, its allocable share of each item of income, gain, loss, deduction or credit recognized by the Liquidating Trust (including interest or dividend income earned on bank accounts and other investments) and the Liquidating Trustee will allocate such items to the Holders using any reasonable allocation method. If the Liquidating Trust sells or otherwise disposes of a Liquidating Trust Asset in a transaction in which gain or loss is recognized, each Holder of an Allowed Claim that is entitled to a Distribution from such Liquidating Trust Asset (or the proceeds thereof) will be required to include an income gain or loss equal to the difference between: (i) the Holder's Pro Rata share of the Cash or property received in exchange for the applicable Liquidating Trust Asset sold or otherwise disposed of; and (ii) the Holder's adjusted basis in the Holder's Pro Rata share of the applicable Liquidating Trust Asset. The character and amount of any gain or loss will be determined by reference to the character of the asset sold or otherwise disposed of. Each Holder of an Allowed Claim will be required to report any income or gain recognized on the sale or other disposition of any applicable Liquidating Trust Asset whether or not the Liquidating Trust distributes the sale proceeds

currently and may, as a result, incur a tax liability before the Holder receives a Distribution from the Liquidating Trust.

Notwithstanding the foregoing, Distributions made as of the Effective Date to Holders of Allowed Claims are intended to be treated for U.S. federal income tax purposes as directly from the Debtor to the Holders of such Allowed Claims, and such Holders shall include in their taxable incomes any interest earned on such Distributions from the Effective Date to the date on which the actual Distribution is made.

### 2.  *Disputed Claims & Other Reserves.*

Any reserves for Disputed Claims or the other similar reserves that may be established by the Liquidating Trustee will be treated as one or more reserves taxed either as discrete trusts under §641, *et seq.*, of the Tax Code or as disputed ownership funds under §1.468B-9(b)(1) of the U.S. Treasury Regulations, as determined by the Liquidating Trustee in the manner specified in the Liquidating Trust Agreement.  If treated as discrete trusts, income and gain recognized with respect to the Liquidating Trust Assets in any Disputed Claims reserve will be subject to an entity level tax to the extent the income or gain is not distributed to Holders of Allowed Claims within the same taxable year.  If treated as disputed ownership funds, income and gain recognized with respect to any Liquidating Trust Assets in any Disputed Claims reserve will be subject to an entity level tax regardless of whether income or gain is distributed to Holders of Allowed Claims within the same taxable year.

## E.  Income Reporting & Withholding

Under the Tax Code's backup withholding rules, the Holder of an Allowed Claim may be subject to backup withholding with respect to Distributions or payments made under the Plan unless the Holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact, or provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax.  Holders of Allowed Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

## F.  Federal Income Tax Consequences to Holders of Interests

Under the Plan, Holders of Interests will not receive anything on account of such Interest. A Holder of such Interest will recognize loss in an amount equal to such Holder's adjusted tax basis in the Interest.  The character of any recognized loss will depend upon several factors, including, but not limited to, the status of the Holder, the nature of the Interest in the

Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period and the extent to which the Holder had previously claimed a deduction for the worthlessness of all or a portion of the Interest.

There are many factors that will determine the tax consequences to each Holder of an Interest. Furthermore, the tax consequences of the Plan are complex and, in some case, uncertain. Therefore, it is important that each Holder of an Interest obtain its own professional tax advice regarding the tax consequences to such Holder of an Interest as a result of the Plan.

### G.  Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL, AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

### XII.   RISK FACTORS

Holders of Claims and Interests against the Debtor should read and consider carefully the information set forth below, as well as the other information set forth in this Disclosure Statement, including the documents included with, or referred to by, the Disclosure Statement before voting to accept or reject the Plan. This information, however, should not be regarded as necessarily setting forth the only potential risks involved in connection with the Plan and its implementation.

### A.  Failure To Satisfy Vote Requirement

In the event that sufficient votes accepting the Plan are not received and, as a result, the Debtor is unable to confirm the Plan as proposed, the Debtor will assess the alternatives available to it, including: (i) amending the Plan; or (ii) converting this Case to a Chapter 7 liquidation proceeding. There is substantial risk either of these alternatives will result in less favorable treatment of Claims and Interests than is provided in the Plan.

## B. Non-Consensual Confirmation

In the event any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm such Plan at the Debtor's request if at least one Impaired Class of Claims has accepted the Plan (with such acceptances being determined without including the vote of any "insider" in such Class), and, as to each Impaired Class that has not accepted the Plan, the Bankruptcy Court determines the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to any dissenting Impaired Class. Because the Plan deems Class 5 Equity Interests to have rejected the Plan, these requirements must be satisfied with respect to such Class. The Debtor believes that the Plan satisfies these requirements, although there can be no assurances that the Bankruptcy Court will make the findings necessary to reach this result.

## C. Amount of Allowed Claims

The total amount of all Claims filed in the Case may materially exceed the estimated amounts of Allowed Claims assumed in the development of the Plan, in the valuation estimates provided above. The actual amount of all Allowed Claims in any Class may differ significantly from the estimates provided in this Disclosure Statement. Accordingly, the amount and timing of the Distributions that will ultimately be received by any particular Holder of an Allowed Claim in any Class may be materially and adversely affected if the estimates are exceeded as to any Class.

## XIII. ALTERNATIVES TO CONFIRMATION & CONSUMMATION OF THE PLAN

The Debtor believes that the Plan affords Holders of Claims the potential for the greatest recovery and, therefore, is in the best interests of such Holders.

If, however, the requisite acceptances are not received, or the Plan is not confirmed or consummated, the theoretical alternatives include: (i) formulation of an alternative plan of liquidation; (ii) liquidation of the Debtor and its Estate under Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Case.

## A. Alternative Plans of Liquidation

If the Plan is not confirmed, the Debtor may attempt to formulate and propose a different plan or plans of liquidation. To formulate and secure approval of an alternative plan, the Debtor would require an extension of additional debtor-in-possession financing or obtain replacement financing, and the Debtor can offer no assurance that it would be successful in this regard.

The Debtor believes that the Plan, as described herein, enables Creditors to realize the greatest possible value under the circumstances and, compared to any other or later alternative plan of liquidation, has the greatest likelihood of being confirmed and consummated.

### B.  Chapter 7 Liquidation of the Debtor

If no plan is confirmed, the Debtor may be forced to liquidate under Chapter 7 of the Bankruptcy Code, under which a trustee would be elected or appointed to liquidate the Debtor's assets for distribution to creditors according to the priorities established by the Bankruptcy Code.  It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective Holders of Claims against or Interests in the Debtor.

The Debtor believes that in liquidation under Chapter 7, before Creditors received any distribution, additional administrative expenses related to the appointment of a trustee and the trustee's attorneys, accountants and other Professionals would cause a substantial diminution in the value of the Debtor's Estate.  The assets available for distribution to Creditors would be reduced by such additional expenses and by Claims, some of which would be entitled to priority.  The Liquidation Analysis, discussed in §X(C)(2) (the "*best interests test*"), and attached to this Disclosure Statement as Exhibit D, suggests unsecured Creditors would receive *de minimis* distributions on their Claims in a liquidation.

## XIV.  CONCLUSION

The Debtor submits that, under the Plan, Holders of General Unsecured Claims have an opportunity to receive a meaningful recovery on their Claims, while at the same time avoiding the additional fees and expenses that would be incurred upon conversion to Chapter 7. Therefore, the Debtor believes that the Distributions provided for in the Plan are fair and equitable, and the Debtor strongly recommends acceptance of the Plan.

If you are eligible to vote on the Plan, please do so now by completing and returning the enclosed ballot.

**Remainder of Page Intentionally Blank**

Dated November 18, 2019.

SIVYER STEEL CORPORATION

By: /s/ Jeffrey D. Goetz

    /s/ Vincent R. Ledlow
    Counsel for the Debtor

Jeffrey D. Goetz, Esq., AT0002832
Vincent R. Ledlow, Esq., AT0013348
**BRADSHAW, FOWLER, PROCTOR &**
**FAIRGRAVE, P.C.**
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
Telephone: (515) 246-5817
Facsimile: (515) 246-5808
goetz.jeffrey@bradshawlaw.com
ledlow.vincent@bradshawlaw.com

*General Reorganization Counsel to*
*the Debtor and Debtor in Possession*

**LIST OF EXHIBITS**

Exhibit A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Debtor's Tax Year 2017 Financial Statements

Exhibit B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . List of Allowed General Unsecured Claims

Exhibit C . . . . . . . . . . . . . . . Executory Contracts Assumed by the Debtor and Assigned to SSC

Exhibit D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Debtor's Liquidation Analysis

**EXHIBIT A TO THE DISCLOSURE STATEMENT OF SIVYER STEEL CORPORATION, DEBTOR AND DEBTOR-IN-POSSESSION, DATED NOVEMBER 15, 2019**

Tax Year 2017 Financial Statements

**SSC BALANCE SHEET**
**($000)**

| | Period 12 2016 | Period 1 2017 | Period 2 2017 | Period 3 2017 | Period 4 2017 | Period 5 2017 | Period 6 2017 | Period 7 2017 | Period 8 2017 | Period 9 2017 | Period 10 2017 | Period 11 2017 | Period 12 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | | |
| Cash | $ 58 | $ 55 | $ 271 | $ 274 | $ 666 | $ 741 | $ 684 | $ 577 | $ 683 | $ 671 | $ 660 | $ 822 | $ 1,416 |
| Accounts Receivable (Net) | 1,037 | 1,128 | 878 | 1,034 | 1,252 | 998 | 1,289 | 1,389 | 1,327 | 847 | 876 | 950 | 1,144 |
| Cash & A/R | $ 1,095 | $ 1,183 | $ 1,149 | $ 1,308 | $ 1,917 | $ 1,739 | $ 1,973 | $ 1,967 | $ 2,010 | $ 1,518 | $ 1,536 | $ 1,771 | $ 2,559 |
| | | | | | | | | | | | | | |
| Raw Materials | $ 956 | $ 855 | $ 978 | $ 872 | $ 909 | $ 780 | 853 | 898 | 976 | 1,011 | 882 | 874 | 858 |
| Maintenance Materials | 1,054 | 1,218 | 1,136 | 1,114 | 1,104 | 1,089 | 1,033 | 1,272 | 1,296 | 1,213 | 1,045 | 1,201 | 1,012 |
| Work In Process | 4,702 | 4,553 | 4,980 | 5,816 | 5,592 | 5,658 | 5,521 | 5,655 | 5,621 | 6,090 | 5,939 | 5,092 | 3,947 |
| Finished Goods | 1,703 | 1,441 | 1,304 | 1,323 | 1,217 | 1,162 | 1,169 | 1,036 | 1,011 | 990 | 1,011 | 980 | 1,060 |
| In-Transit | 4 | 47 | 34 | 26 | 55 | 30 | - | 30 | 28 | 8 | 0 | 27 | 44 |
| Less: Reserve | (3,132) | (3,083) | (2,801) | (3,299) | (3,471) | (3,490) | (3,303) | (3,397) | (3,436) | (3,022) | (2,797) | (2,400) | (2,146) |
| Net Inventory | $ 5,287 | $ 5,032 | $ 5,631 | $ 5,851 | $ 5,406 | $ 5,231 | $ 5,273 | $ 5,494 | $ 5,495 | $ 6,290 | $ 6,081 | $ 5,774 | $ 4,775 |
| | | | | | | | | | | | | | |
| Prepaid Expenses | $ 989 | $ 1,053 | $ 1,066 | $ 963 | $ 863 | $ 872 | $ 720 | $ 729 | $ 459 | $ 1,310 | $ 1,194 | $ 1,184 | $ 1,051 |
| Other Current Assets | 519 | 517 | 14 | 20 | 101 | 24 | 27 | 26 | 552 | 135 | 69 | 118 | 124 |
| | | | | | | | | | | | | | |
| TOTAL CURRENT ASSETS | $ 7,890 | $ 7,784 | $ 7,860 | $ 8,141 | $ 8,287 | $ 7,866 | $ 7,992 | $ 8,217 | $ 8,516 | $ 9,254 | $ 8,879 | $ 8,847 | $ 8,509 |
| | | | | | | | | | | | | | |
| Property, Plant & Equipment | $ 43,151 | $ 43,072 | $ 43,072 | $ 43,072 | $ 43,072 | $ 43,072 | $ 43,099 | $ 43,099 | $ 42,965 | $ 42,978 | $ 42,978 | $ 42,978 | $ 41,992 |
| Less: Accumulated Deprec. | (27,351) | (27,594) | (27,885) | (28,176) | (28,463) | (28,744) | (29,020) | (29,294) | (29,456) | (29,719) | (29,981) | (30,243) | (29,577) |
| Net PP & E | $ 15,800 | $ 15,478 | $ 15,187 | $ 14,897 | $ 14,609 | $ 14,329 | $ 14,079 | $ 13,805 | $ 13,509 | $ 13,259 | $ 12,997 | $ 12,735 | $ 12,414 |
| | | | | | | | | | | | | | |
| TOTAL ASSETS | $ 23,690 | $ 23,262 | $ 23,047 | $ 23,038 | $ 22,897 | $ 22,195 | $ 22,071 | $ 22,022 | $ 22,025 | $ 22,514 | $ 21,876 | $ 21,581 | $ 20,923 |
| | | | | | | | | | | | | | |
| **LIABILITIES** | | | | | | | | | | | | | |
| Line of Credit/Overlines | $ 6,618 | $ 6,479 | $ 6,379 | $ 6,304 | $ 6,279 | $ 6,254 | $ 6,092 | $ 6,134 | $ 5,795 | $ 5,718 | $ 5,683 | $ 5,491 | $ 5,134 |
| Accounts Payable | 6,787 | 7,074 | 7,133 | 6,959 | 7,140 | 6,942 | 7,071 | 6,913 | 6,808 | 6,785 | 6,712 | 6,784 | 6,928 |
| Notes Payable | 810 | 734 | 683 | 596 | 514 | 433 | 345 | 339 | 336 | 1,062 | 969 | 875 | 782 |
| Accrued Expenses | 3,330 | 3,008 | 2,987 | 3,358 | 3,311 | 3,117 | 3,319 | 3,519 | 3,607 | 3,698 | 3,782 | 3,818 | 4,636 |
| Current Portion of LT Debt | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | - | - | - |
| | | | | | | | | | | | | | |
| TOTAL CURRENT LIABILITIES | $ 17,895 | $ 17,645 | $ 17,531 | $ 17,567 | $ 17,594 | $ 17,096 | $ 17,177 | $ 17,254 | $ 16,896 | $ 17,612 | $ 17,146 | $ 16,968 | $ 17,481 |
| | | | | | | | | | | | | | |
| Long Term Debt | $ 2,538 | $ 2,538 | $ 2,538 | $ 2,523 | $ 2,523 | $ 2,508 | $ 2,493 | $ 2,478 | $ 2,463 | $ 2,448 | $ 2,783 | $ 2,783 | $ 2,753 |
| Notes Payable - Vendors | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 | 2,020 |
| Non-Current Pensions | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 |
| Reserve Post Retirement Ben | 217 | 217 | 217 | 217 | 217 | 217 | 217 | 217 | 217 | 217 | 217 | 217 | 217 |
| | | | | | | | | | | | | | |
| TOTAL LONG TERM LIABILITIES | $ 5,056 | $ 5,056 | $ 5,056 | $ 5,041 | $ 5,041 | $ 5,026 | $ 5,011 | $ 4,996 | $ 4,981 | $ 4,966 | $ 5,301 | $ 5,301 | $ 5,271 |
| | | | | | | | | | | | | | |
| TOTAL LIABILITIES | $ 22,952 | $ 22,701 | $ 22,587 | $ 22,608 | $ 22,636 | $ 22,123 | $ 22,188 | $ 22,251 | $ 21,878 | $ 22,578 | $ 22,447 | $ 22,269 | $ 22,752 |
| | | | | | | | | | | | | | |
| **SHAREHOLDER'S EQUITY** | | | | | | | | | | | | | |
| Dividends Payable (Subordinated) | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 12,287 | $ 13,632 |
| Preferred Stock | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 | 20,690 |
| Additional Paid-In-Capital | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (9,910) | (11,255) |
| Retained Earnings | (10,462) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) | (20,239) |
| Accumulated Comp Income | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) | (2,089) |
| Net Ordinary Income Year-To-Date | (9,777) | (177) | (279) | (308) | (477) | (666) | (855) | (967) | (591) | (803) | (1,309) | (1,426) | (2,567) |
| | | | | | | | | | | | | | |
| TOTAL EQUITY | $ 738 | $ 561 | $ 460 | $ 430 | $ 261 | $ 72 | $ (117) | $ (229) | $ 147 | $ (64) | $ (571) | $ (688) | $ (1,829) |
| | | | | | | | | | | | | | |
| TOTAL LIABILITIES & EQUITY | $ 23,690 | $ 23,262 | $ 23,047 | $ 23,038 | $ 22,897 | $ 22,195 | $ 22,071 | $ 22,022 | $ 22,025 | $ 22,514 | $ 21,876 | $ 21,581 | $ 20,923 |

**SSC INCOME STATEMENT**
($000)

| | PERIOD 1 Actual | PERIOD 2 Actual | PERIOD 3 Actual | PERIOD 4 Actual | PERIOD 5 Actual | PERIOD 6 Actual | PERIOD 7 Actual | PERIOD 8 Actual | PERIOD 9 Actual | PERIOD 10 Actual | PERIOD 11 Actual | PERIOD 12 Actual | YTD 2017 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Casting Sales | $ 2,971 | $ 2,908 | $ 3,643 | $ 3,179 | $ 2,748 | $ 3,435 | $ 2,516 | $ 2,816 | $ 2,494 | $ 2,328 | $ 2,571 | $ 2,947 | $ 34,555 | 93% |
| China Sales | 6 | 88 | 68 | 2 | 68 | 44 | 35 | 78 | 123 | 12 | 3 | 46 | 574 | 2% |
| Tooling Sales | 9 | 15 | 1 | - | 35 | 22 | 44 | 18 | 35 | 39 | 66 | 2 | 288 | 1% |
| Surcharge | 166 | 127 | 304 | 218 | 183 | 185 | 175 | 164 | 122 | 164 | 155 | 186 | 2,148 | 6% |
| Returns | (28) | (20) | (10) | (41) | (34) | (49) | (1) | (10) | (26) | (3) | (95) | (72) | (391) | -1% |
| Freight | 10 | (1) | - | - | - | - | - | (0) | - | 5 | 8 | - | 22 | 0% |
| Discounts | (1) | - | (2) | (4) | (7) | (1) | (2) | (1) | (1) | (3) | (3) | (11) | (35) | 0% |
| Net Sales | $ 3,132 | $ 3,117 | $ 4,004 | $ 3,354 | $ 2,993 | $ 3,637 | $ 2,767 | $ 3,064 | $ 2,747 | $ 2,541 | $ 2,705 | $ 3,098 | $ 37,161 | |
| Metal & Alloys | $ 345 | $ 553 | $ 698 | $ 518 | $ 616 | $ 536 | $ 422 | $ 414 | $ 411 | $ 385 | $ 206 | $ 172 | $ 5,274 | 14% |
| Productive Materials | 532 | 784 | 693 | 547 | 496 | 500 | 445 | 536 | 622 | 414 | 308 | 282 | 6,159 | 16% |
| Direct Labor | 311 | 323 | 455 | 253 | 274 | 356 | 283 | 305 | 358 | 302 | 244 | 249 | 3,714 | 10% |
| Indirect Labor | 271 | 347 | 356 | 233 | 235 | 335 | 271 | 278 | 310 | 290 | 273 | 257 | 3,456 | 9% |
| Maintenance Labor | 68 | 68 | 86 | 68 | 71 | 75 | 59 | 58 | 70 | 53 | 47 | 58 | 784 | 2% |
| Maintenance Materials | 52 | 45 | 72 | 53 | 48 | 118 | 35 | 46 | 76 | 73 | 45 | 66 | 730 | 2% |
| Utilities | 249 | 290 | 309 | 181 | 216 | 294 | 299 | 207 | 281 | 188 | 203 | 262 | 2,979 | 8% |
| Operating Supplies | 78 | 77 | 156 | 87 | 76 | 90 | 83 | 62 | 134 | 92 | 63 | 102 | 1,100 | 3% |
| Salaries | 93 | 96 | 123 | 109 | 105 | 125 | 101 | 128 | 107 | 100 | 101 | 129 | 1,315 | 4% |
| Payroll Taxes & Fringes | 389 | 459 | 486 | 388 | 288 | 495 | 393 | 278 | 381 | 293 | 374 | 656 | 4,880 | 13% |
| Depreciation | 294 | 291 | 290 | 287 | 280 | 277 | 274 | 269 | 263 | 262 | 262 | 232 | 3,282 | 9% |
| Other Fixed Expenses | 63 | 62 | 64 | 66 | 67 | 65 | 64 | 64 | 64 | 74 | 73 | 81 | 807 | 2% |
| Other Expenses | 76 | 95 | 116 | 87 | 75 | 124 | 43 | 116 | 183 | 132 | 129 | 104 | 1,279 | 3% |
| China Purchases | 38 | 59 | 22 | 34 | 26 | 0 | 64 | 49 | 61 | 11 | 47 | 56 | 468 | 1% |
| Machining Costs | 102 | 108 | 104 | 159 | 83 | 149 | 112 | 99 | 85 | 64 | 58 | 112 | 1,234 | 3% |
| Total Manuf. Costs | $ 2,960 | $ 3,658 | $ 4,031 | $ 3,069 | $ 2,957 | $ 3,539 | $ 2,947 | $ 2,909 | $ 3,408 | $ 2,734 | $ 2,433 | $ 2,817 | $ 37,460 | |
| Inventory (Increase)/Decrease | $ 190 | $ (744) | $ (324) | $ 251 | $ (25) | $ (91) | $ (227) | $ 55 | $ (752) | $ 54 | $ 289 | $ 941 | $ (384) | |
| Cost of Sales | $ 3,150 | $ 2,914 | $ 3,708 | $ 3,320 | $ 2,932 | $ 3,447 | $ 2,719 | $ 2,963 | $ 2,655 | $ 2,787 | $ 2,721 | $ 3,758 | $ 37,076 | |
| Gross Profit | $ (18) | $ 203 | $ 297 | $ 35 | $ 61 | $ 190 | $ 48 | $ 101 | $ 91 | $ (246) | $ (17) | $ (660) | $ 84 | |
| | -1% | 7% | 7% | 1% | 2% | 5% | 2% | 3% | 3% | -10% | -1% | -21% | 0% | |
| Sales | 28 | 31 | 33 | 41 | 24 | 34 | 32 | 37 | 36 | 29 | 46 | 41 | 412 | |
| Administration | 148 | 244 | 228 | 185 | 177 | 306 | 226 | 138 | 231 | 213 | 203 | 331 | 2,629 | |
| SG & A | $ 176 | $ 275 | $ 261 | $ 227 | $ 201 | $ 341 | $ 258 | $ 175 | $ 267 | $ 241 | $ 248 | $ 372 | $ 3,041 | 8% |
| Operating Income | $ (194) | $ (72) | $ 36 | $ (192) | $ (140) | $ (151) | $ (210) | $ (74) | $ (175) | $ (487) | $ (265) | $ (1,032) | $ (2,957) | |
| Interest/(Expense) | $ (44) | $ (41) | $ (64) | $ (56) | $ (61) | $ (54) | $ (57) | $ (64) | $ (62) | $ (66) | $ (55) | $ (83) | $ (707) | |
| Other Income (Expense) | 61 | 11 | (1) | 79 | 12 | 16 | 155 | 514 | 26 | 46 | 203 | (26) | 1,097 | |
| Total Other Income/(Expense) | $ 17 | $ (30) | $ (65) | $ 23 | $ (49) | $ (38) | $ 98 | $ 450 | $ (36) | $ (19) | $ 148 | $ (109) | $ 390 | |
| Net Income Before Taxes | $ (177) | $ (101) | $ (30) | $ (169) | $ (189) | $ (189) | $ (112) | $ 376 | $ (212) | $ (507) | $ (117) | $ (1,141) | $ (2,567) | |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Net Income | $ (177) | $ (101) | $ (30) | $ (169) | $ (189) | $ (189) | $ (112) | $ 376 | $ (212) | $ (507) | $ (117) | $ (1,141) | $ (2,567) | |
| EBITDA | $ 161 | $ 230 | $ 325 | $ 174 | $ 152 | $ 142 | $ 219 | $ 709 | $ 114 | $ (179) | $ 201 | $ (826) | $ 1,422 | |
| EBITDA % | 5.14% | 7.38% | 8.12% | 5.19% | 5.09% | 3.89% | 7.92% | 23.14% | 4.14% | -7.03% | 7.42% | -26.65% | 3.83% | |
| Net Tons Shipped | 524 | 544 | 600 | 598 | 461 | 607 | 437 | 448 | 462 | 502 | 426 | 418 | 6,025 | |
| Net Tons Produced | 481 | 699 | 745 | 551 | 493 | 613 | 446 | 498 | 568 | 420 | 252 | 303 | 6,068 | |

**EXHIBIT B TO THE DISCLOSURE STATEMENT OF SIVYER STEEL CORPORATION, DEBTOR AND DEBTOR-IN-POSSESSION, DATED NOVEMBER 15, 2019**

Allowed General Unsecured Claims

| Name | Allowed Amount |
|------|---------------:|
| 2 & 92 Used Truck Parts, Inc. | $159.38 |
| A & A Air Conditioning, Inc. | $8,233.65 |
| A L L Equipment | $14,179.46 |
| Acadian Lawn & Landscape | $1,103.20 |
| Acro Manufacturing  Corporation | $88,416.67 |
| ADP Commercial Leasing | $5,391.09 |
| Advanced Environ. Testing & Abatement | $1,300.00 |
| Aeromet Engineering Inc. | $370.00 |
| Aerotek Commercial Staffing, Inc. | $37,821.98 |
| Ahlers & Cooney, P.C. | $90.00 |
| Airgas USA, LLC | $832.00 |
| Airrco LLC | $1,250.00 |
| Alignex, Inc. | $4,434.98 |
| Allied Electronics | $1,110.95 |
| Alltest, Inc. | $3,064.50 |
| Alter Trading Corporation | $139,430.33 |
| Altorfer Rents | $15,966.52 |
| Altorfer, Inc. | $3,632.70 |
| Ameralloy Steel Corporation | $2,068.94 |
| American Colloid Co. | $137,925.80 |
| American Electric Control Corp. | $2,480.31 |
| American Express | $21,754.52 |
| American Foundry Society | $5,620.00 |
| American Pattern & CNC Works Inc. | $5,500.00 |
| Ameri-source Specialty Products, Inc. | $62,286.94 |
| Anderson Commercal Concrete, Inc. | $10,377.00 |
| ASI International LTD | $19,325.65 |
| Ask Chemicals | $54,249.68 |
| Auburn Systems, LLC | $2,201.05 |
| Audiolgy Consultants PC | $1,244.77 |
| B & E Pattern Co. | $37,100.00 |
| B & L Information Systems, Inc. | $3,997.12 |
| Balcon | $267.50 |
| Barton Solvents, Inc. | $273.00 |
| Batteries & Bulbs | $588.83 |
| BDI - Bearing Distributors | $146,701.79 |
| Behr Iron & Metal | $7,203.75 |
| Berg Engineering & Sales, Inc. | $1,266.00 |
| Big River Equipment Co. Inc. | $1,715.89 |
| Blackhawk Specialty Products, Inc. | $199.16 |
| Block Ready Mix Group | $479.72 |
| Bodycote Thermal Processing | $702.00 |
| Bourn & Koch, Inc. | $95.00 |
| Bowe Machine Co. | $14,168.76 |
| Brake Products, Inc. | $6,035.67 |
| Cal-Rite Corporation | $2,004.60 |

| | |
|---|---|
| Canfield & Joseph, Inc. | $540,954.14 |
| Carlin Automation Inc. | $3,029.87 |
| Carpenter Brothers, Inc. | $205,557.85 |
| CarQuest Auto Parts Stores | $494.00 |
| Cartridge World - Utica | $48.14 |
| Caterpillar Financial Services Corp | $12,486.81 |
| CDW Direct LLC | $5,017.69 |
| CEM Corporation | $1,284.00 |
| Certified Laboratories | $379.09 |
| CH Robinson Co. Inc. | $13,510.43 |
| Chemsearch | $16,391.96 |
| Christy Refractories Co. LLC | $83,600.00 |
| Cintas Corporation #762 | $7,729.19 |
| Citibank NA c/o SGS North America | $18,662.00 |
| Citrix Online, LLC | $1,478.93 |
| Coface North America, Inc. | $41,568.00 |
| Communication Innovators Inc. | $5,008.36 |
| Complete Heat Treating | $2,100.00 |
| Conductix, Inc. | $2,744.00 |
| Constellation New Energy - Gas Div | $91,696.53 |
| Continental Fire Sprinkler Co. | $5,276.89 |
| Control Application & Maintence, Inc. | $717.10 |
| Control Specialists | $384.00 |
| Con-Way Freight | $4,335.31 |
| Cores for You | $111,969.31 |
| Coventry Capital Partners, Inc. | $232,719.56 |
| Crack Eliminator | $3,722.00 |
| Crane Pro Parts | $8,774.25 |
| Crescent Electric Supply | $8,627.39 |
| CS Technologies | $1,536.72 |
| C-Spec | $1,040.00 |
| CT Corporation | $162.80 |
| CT Products, LLC | $79,961.34 |
| Culligan of Davenport | $856.00 |
| Dale Weeldreyer | $1,904.48 |
| Dan's Overhead Doors | $5,385.51 |
| Davenport Electric Contract Co. | $84,878.60 |
| Dearboard Crane and Engineering Co | $2,132.00 |
| Dell Financial Services | $347.59 |
| Dell Financial Services L.L.C. | $85,502.98 |
| Dell Marketing LP | $3,507.20 |
| Dietert Foundry Testing Equipment | $1,538.13 |
| Dimensional Graphics | $2,084.39 |
| Direct Path | $6,336.28 |
| Diversified Benefit Services, Inc. | $390.99 |
| Diversified Nonferrous Tech Inc, | $7,997.02 |
| Dohrn Transfer Company | $14,331.77 |

| | |
|---|---|
| E91, Inc. | $8,080.00 |
| Eagle Engineering, Inc. | $42,384.54 |
| Eastern Iowa Tire | $5,957.81 |
| EasyPower, LLC | $14,432.00 |
| EDM ZAP Parts, Inc. | $900.00 |
| Electronic Engineering | $2,686.87 |
| Embroidme-Davenport | $1,111.29 |
| EMC Insurance/IA | $20,625.26 |
| Energetics | $621.72 |
| Engles Trucking Services, Inc. | $20,255.00 |
| Enviromark | $1,500.00 |
| Eriez Manufacturing | $5,878.77 |
| Exact Metrology Inc. | $105.00 |
| Fairfield Manufacturing | $30,100.00 |
| Fastenal Company | $4,908.44 |
| Fed Ex | $1,161.00 |
| Fed Ex Freight | $184.83 |
| Federal Insurance Company | $59,648.61 |
| Ferrellgas, LP | $975.06 |
| First Insurance Funding | $902,028.01 |
| Flash, Inc. | $13,097.45 |
| Flex-Pac, Inc. | $4,887.98 |
| Ford Photography | $150.00 |
| Foseco, Inc. | $24,730.32 |
| Foundry Sand Service, LLC | $93,697.41 |
| G & K Services | $9,097.07 |
| G & W Patterns, Inc. | $16,050.00 |
| Gardner Engineering Inc. | $6,210.11 |
| General Electric Company | $884,349.00 |
| General Kinematics Corp | $16,180.23 |
| General Pattern Corp | $20,230.00 |
| Gett Industries, Inc. | $45,798.74 |
| Glass Service Center | $245.00 |
| Global Equipment Co., Inc. | $3,632.66 |
| Godfrey & Kahn | $224,148.42 |
| Grainger | $8,289.69 |
| Graphic Products | $209.99 |
| Guaranteed Pattern | $8,000.00 |
| Gudgeon Thermfire International, Inc. | $7,569.50 |
| Hach Co. | $252.38 |
| Hagemeyer North America Inc. | $3,942.96 |
| Hal Davis | $2,713.17 |
| Harbor Freight Tools USA Inc. | $272.04 |
| Hastie Mining & Trucking | $16,590.00 |
| Hempel Pipe & Supply Inc. | $2,170.47 |
| Heraeus Electro-Nite Co. | $9,536.60 |
| Holland Inc. | $2,364.49 |

| | |
|---|---|
| Holmes Murphy & Associates | $69,731.09 |
| Holming Fan & Fabrication | $2,062.84 |
| Home Depot Credit Services | $70.00 |
| Hometown Plumbing & Heating | $586.00 |
| Hot-Line Freight System, Inc. | $1,250.00 |
| Hydraulic Solutions | $5,364.17 |
| IFM Efector Inc. | $336.00 |
| Insight Direct USA, Inc. | $9,693.36 |
| Internal Revenue Service | $1,250.00 |
| Iowa American Water (IL) | $6,586.87 |
| Iowa Department of Natural Resources | $8,000.00 |
| Iowa Fluid Power, Inc. | $765.26 |
| Iowa Illinois Termite & Pest Inc. | $711.55 |
| Iowa Machinery & Supply, Inc. | $73,002.34 |
| Iowa-American Water (IA) | $4,279.25 |
| J&L Consulting | $1,672.68 |
| Janda Motor Services, Inc. | $17,445.63 |
| Jerico Tool Company | $2,021.00 |
| JP Morgan Chase | $447,690.02 |
| K & K True Value Hardware | $1,191.11 |
| K & M Machine Fabricating Inc. | $9,450.00 |
| Karden Sales & Consulting, Inc. | $2,897.45 |
| KD Industries of Illinois, Inc. | $6,865.42 |
| Komatsu Mining | $628,000.00 |
| Konecranes, Inc. | $5,817.25 |
| KRC Enterprises, LLC | $925.00 |
| Kymbyl Komplete Kare, Inc. | $3,595.20 |
| L&M Accounts Inc. | $4,938.00 |
| Lanco Slings & Rigging, Inc. | $13,764.52 |
| Lane & Waterman | $21,380.00 |
| Lanzen, Inc. | $10,542.00 |
| Liebovich Steel & Aluminum Co. | $6,556.50 |
| Linco Refractory Supply Inc. | $35,608.00 |
| Lindfield Corporate Services Ltd. | $7,950.00 |
| Linwood Mining & Minerals Corp | $7,386.42 |
| Lloyd's Register Quality Assurance | $1,587.81 |
| Logan Contractors Supply Inc. | $25,721.25 |
| Macawber Engineering, Inc. | $13,876.32 |
| Machine Tooling Technology | $918.52 |
| Magma Foundry Technologies | $38,718.70 |
| Malespin Cleaning Services | $6,420.00 |
| Manley Brothers of Indiana, Inc. | $101,696.68 |
| Marco, Inc. | $2,263.68 |
| Materials & Equipment Inc. | $4,372.65 |
| Max's Cab Company | $6,258.25 |
| McGuire Sponsel | $8,896.89 |
| McMaster Carr Supply Co. | $7,917.54 |

| | |
|---|---|
| Mediacom | $700.00 |
| Metal Surgery Milwaukee Ltd. | $6,160.00 |
| Metamora Industries | $26,636.63 |
| Metcast Service Tech Resources Inc. | $929.50 |
| Metlife Industries | $392.00 |
| Metro Tools & Abrasives | $1,258.64 |
| Mid States Heating Services Inc. | $7,473.95 |
| Mid States Specialty Sales | $2,176.81 |
| MidAmerican Energy | $189,335.51 |
| MidAmerican Energy Services, LLC | $290,913.65 |
| Midstate Manufacturing Co | $41,262.20 |
| Midwest Air Compressor LLC | $535.00 |
| Midwest Filtration LLC | $785.36 |
| Midwest Therapy Centers | $275.00 |
| Milwaukee Habitat for Humanity | $8,000.00 |
| Mississippi Laser Inc. | $5,466.00 |
| Mitts & Merrill LP | $5,213.00 |
| Modular Space Corporation | $1,469.16 |
| Morton Machining LLC | $600.00 |
| Motion Industries, Inc. | $17,025.61 |
| MRS - The Management Association | $125.00 |
| MSC Industrial Supply Co. | $1,764.06 |
| N & M Transfer Co., Inc. | $34,308.26 |
| N&M Expedited | $32,544.73 |
| N&M Transfer Co. Inc. | $2,059.07 |
| Natural Resource Technology | $7,091.90 |
| New Expert Foundry Services | $4,444.80 |
| New Pig Corporation | $312.00 |
| Ningbo Daming Precision Casting Co. Ltd. | $148,787.36 |
| Ningbo Qianhao Metal Product Co. | $9,070.56 |
| Ningbo Yong Chao Mould Co. Ltd | $15,200.00 |
| Nite Ize | $16.09 |
| Northwest Mechanical, Inc. | $4,938.48 |
| NSL Central Testing LLC | $6,066.69 |
| O'Connell Machinery Co. Inc. | $5,145.35 |
| Oertel Sheet Metal | $87,440.00 |
| Olderog Tire Service Inc. | $5,848.54 |
| Omega Engineering Inc. | $1,293.62 |
| Overhead Door Co. of Peoria | $6,750.00 |
| Palmer Manufacturing & Supply Inc. | $2,974.99 |
| Parts Engineering Co. LLC | $4,005.47 |
| PC Connection | $5,135.32 |
| Peerless Energy Systems LLC | $2,308.98 |
| Per Mar Security | $9,437.41 |
| Petersen Plumbing & Heating | $950.72 |
| PGI | $76.25 |
| Pier Foundry & Pattern Shop | $9,619.52 |

| | |
|---|---|
| Plant Equipment Co. Inc. | $49,547.48 |
| Postal Source | $200.29 |
| PRI Inc. | $8,475.00 |
| PRIAC | $25,075.50 |
| Pride Machine & Tool, Inc. | $9,950.00 |
| Prince Minerals, Inc. | $49,280.00 |
| QC Analytical Services LLC | $4,252.19 |
| QC Transport, Inc. | $970.30 |
| Quad Cities Chamber of Commerce | $4,300.00 |
| Quad City Occupational Health | $3,553.00 |
| Quad City Safety Inc. | $35,697.37 |
| Quad City Testing Lab Inc. | $2,474.02 |
| Quant Corporation | $5,966.20 |
| Quincy Compressor LLC | $12,333.57 |
| R&L Carriers | $1,216.45 |
| Raynor Door Inc of the Quad Cities | $3,386.49 |
| R-Con NDT INV | $37,877.78 |
| Recycling Solutions & Consultants | $25,410.01 |
| Red Wing Shoe Store | $8,202.09 |
| Red Wing Shoe Store | $928.72 |
| Redridge Lender Services LLC | $8,015.86 |
| Refractory & Insulation Supply, Inc. | $54,756.25 |
| Regalia Manufacturing Co. | $706.40 |
| Republic Companies | $20,254.67 |
| Republic Services | $16,994.19 |
| Rexco Equipment | $167.51 |
| Richardson Manufacturing Co. | $227,925.50 |
| Rilco Fluid Care, Inc. | $32,278.28 |
| RIM Logistics Ltd | $104,705.58 |
| River Valley Cooperative | $7,843.02 |
| RK Dixon | $608.77 |
| Road Machinery & Supplies | $1,012.54 |
| Robert Half Finance & Accounting | $16,050.00 |
| Rock Island Electric Motor Inc. | $6,059.59 |
| Rock Island Lubricants and Chemical, Inc | $37,606.94 |
| Rockford Rigging | $32,014.04 |
| Roemer Machine & Welding Co. | $360.00 |
| Rogan, Inc. | $4,510.10 |
| Russell Companies | $265.08 |
| Ryan & Assoc. Inc. | $8,603.85 |
| Ryder Transportation Services | $2,398.64 |
| Sadler Machine Co. | $25,270.00 |
| Safety Kleen Corp | $17.01 |
| Schebler Company | $5,927.85 |
| Schiff Hardin LLP | $25,448.47 |
| Schwenker & Mougin, Inc. | $11,927.30 |
| Scott County Treasurer | $49,476.00 |

| | |
|---|---|
| Sedona Technologies Inc. | $49,577.25 |
| Seither & Cherry Quad Cities, Inc. | $37,500.00 |
| Selective Insurance | $15,860.00 |
| Shanghai Soonv Special Alloy Co. Ltd | $195.34 |
| Shannahan Crane & Hoist, Inc. | $5,766.93 |
| Shenyang Jinli Metals & Minerals | $494,773.17 |
| Sherwin Williams | $8,619.34 |
| Siemens Product Lifecycle Mgmt Software | $48,100.00 |
| Simmers Crane Design & Service | $3,053.07 |
| Smith S J Welding Supply | $161,711.99 |
| Special Olympics Iowa | $30.78 |
| Speyside Machining Holdings, LLC | $2,038.35 |
| Standard Forwarding Co. Inc. | $576.17 |
| State Chemical Solutions | $1,510.50 |
| Steel Founders' Society of America | $14,541.80 |
| Steel Wind Industries, Inc. | $8,850.00 |
| Straight Shot Express | $87.50 |
| Strategy in Progress, LLC | $900.00 |
| Suncoast Packaging Inc. | $2,120.00 |
| Syntron Material Handling, LLC | $1,608.09 |
| TAG Communications, Inc. | $31,689.12 |
| Tall Grass Business Resources, Inc. | $272.81 |
| TBK Bank SSB | $0.00 |
| TCCI Mfg. | $8,221.42 |
| Team Industrial Services Inc. | $3,652.76 |
| Teledyne ISCO Inc. | $283.55 |
| The C.A. Lawton Co. | $1,495.00 |
| Thunder Bay Pattern Works | $10,466.00 |
| Tim Mohs | $324.71 |
| Timberline Pallet & Skid, Inc. | $1,520.40 |
| Tinker Omega Manufacturing | $1,800.47 |
| Tool House, Inc. | $5,136.00 |
| Toolcraft Co. Inc. | $5,955.76 |
| Total Quality Logistics | $6,075.91 |
| Tri Aerospace LLC | $14,015.00 |
| Tri State Fire Control, Inc. | $5,784.22 |
| Tri-City Electric Co. | $1,669.20 |
| Trimborn Tooling Design LLC | $10,309.00 |
| Trinity Consultants | $19,997.94 |
| Tuf-Lok International | $597.37 |
| Tully Industrial Inc. | $1,126.00 |
| Tungsten Network Inc. | $1,420.00 |
| U.S. Energy Services, Inc. | $20,757.00 |
| UI Labs | $500.00 |
| United Steel Workers of America | $4,302.79 |
| Universal Welding and Engineering | $52,084.26 |
| UPS Freight | $154.25 |

| | |
|---|---|
| Van Hydraulics, Inc. | $8,870.97 |
| Van Meter Industrial LLC | $7,373.11 |
| Verizon Wireless | $2,177.07 |
| VWR Scientific LLC | $889.46 |
| Walker National, Inc. | $5,539.50 |
| Walmart Stores, Inc. | $8,868.68 |
| Waltz-Holst Blow Pipe co. Inc. | $70,470.35 |
| Wells Fargo Bank, N.A. | $10,787.86 |
| Wesley B. Huisinga, Esq. | $2,114.00 |
| Wheelabrator Group | $1,524.76 |
| Whirl Air Flow Corporation | $3,135.00 |
| Wynn Environmental | $1,010.00 |
| YMH Torrance Inc. | $9,542.29 |
| Zenar Corporation | $30,305.00 |
| Zhejiang Wujing Machine Mfg Co. Ltd. | $29,729.64 |
| Zhengzhou Hi-Tech Mechanical Industry Co | $9,885.34 |
| **Total Allowed Unsecured Claims** | **$10,064,651.91** |

**EXHIBIT C TO THE DISCLOSURE STATEMENT OF SIVYER STEEL CORPORATION, DEBTOR AND DEBTOR-IN-POSSESSION, DATED NOVEMBER 18, 2019**

Executory Contracts Assumed by the Debtor and Assigned to SSC

| Contracts |
|---|
| 1.    ADP Workforce Now Comprehensive Services Agreement, dated as of September 30, 2015, between ADP, LLC and Seller. |
| 2.    Product Sale Agreement, dated as of October 25, 2012, between Airgas USA, LLC and Seller. |
| 3.    Full Service Maintenance Contract, dated as of April 6, 2016, between Advanced Business Systems, Inc. and Seller. |
| 4.    Pest Control Service Agreement, dated as of November 3, 2017, between Iowa-Illinois Termite & Pest Control, Inc. and Seller. |
| 5.    Commercial Real Estate Lease, dated as of May 3, 2011, between Meadows Warehousing Company and Seller. |
| 6.    Commercial Real Estate Lease, dated as of August 24, 2012, between Meadows Warehousing Company and Seller. |
| 7.    Truck Lease & Service Agreement, dated as of October 18, 2017, among Ryder Truck Rental, Inc., d/b/a Ryder Transportation Services and Seller. |
| 8.    Collective Bargaining Agreement dated October 23, 2017, between Seller and the United Steel, Paper, Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC, on behalf of its Local 105-2 |
| 9.    Integrated Solutions, LLC Proposal for Services, dated September 15, 2017, and related Acceptance of Proposal by Seller, dated October 18, 2017 |
| 10.    Strategic Supply Agreement, dated as of August 2017, among Seller, Ningbo Yinzhou Longxing Casting, Huawei Casting and Ningbo Qianhau Metal Products. |
| 11.    Strategic Supply Agreement, dated as of April 11, 2013, between ZhengZhou Hi-Tech Mechanical Industry Co., Ltd. and Seller. |
| 12.    Faxable Lease Agreement, dated as of April 6, 2016, between Canon Financial Services, Inc. and Seller. |
| 13.    ATM Site Location Agreement, dated as of February 12, 2015, between Cardtronics USA, Inc. and Seller. |
| 14.    Gas Supply Agreement, dated as of July 12, 2017, between Constellation NewEnergy – Gas Division, LLC and Seller. |
| 15.    Product Lease Agreement, dated as of February 8, 2016, between MailFinance Inc. and Seller. |

| Contracts |
|---|
| 16.  Payroll Services Agreement, dated as of December 20, 2017, between Paylocity Corporation and Seller. |
| 17.  Parking Lot Lease, dated as of April 15, 1988, by and between Davenport, Rock Island and Northern Western Railway Company and Seller (as assigned to I & M Rail Link, LLC). |
| 18.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40237630, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 19.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40237640, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 20.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40238160, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 21.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40238231, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 22.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40238290, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 23.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40238295, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 24.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40238299, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 25.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40232699, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 26.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40234029, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 27.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40232337, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 28.  Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40232404, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |

| Contracts |
|---|
| 29. | Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40232611, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 30. | Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40214952, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 31. | Supply Contract between General Dynamics Land Systems and Seller, identified as Purchase Order No. 40214953, including any terms and conditions incorporated therein, with any and all additions, amendments, and revisions thereto. |
| 32. | Commercial Automobile Policy No. CBA 1168422, dated October 1, 2017, issued by Regent Insurance Company to Seller. |
| 33. | Commercial General Liability Policy No. P-001-000012664-01, dated October 1, 2017, issued by Axis Surplus Insurance Company to Seller. |
| 34. | Commercial Inland Marine Policy No. CIM1168422, dated October 1, 2017, issued by General Casualty Company of Wisconsin to Seller. |
| 35. | Commercial Property Policy No. 002943301, dated October 16, 2017, issued by Ironshore Specialty Insurance Company to Seller. |
| 36. | Commercial Property Policy No. 011144310, dated October 16, 2017, issued by Lexington Insurance Company to Seller. |
| 37. | Crime and Kidnap and Ransom Policy No. 106174779, dated October 1, 2017, issued by Travelers Casualty and Surety Company of America to Seller. |
| 38. | Management Liability Policy No. MML-07983-18, dated March 30, 2018, issued by Atlantic Specialty Insurance Company (d/b/a OneBeacon Insurance) to Seller. |
| 39. | Foreign Commercial Package Policy No. WR10006509, dated October 1, 2017, issued by The Insurance Company of the State of Pennsylvania to Seller. |
| 40. | Ocean Cargo Policy No. 000007896103, dated October 1, 2017, issued by Federal Insurance Company (d/b/a Chubb) to Seller. |
| 41. | Pollution Liability Policy No. EPC 6554462 05, dated October 1, 2017, issued by Steadfast Insurance Company (d/b/a Zurich) to Seller. |
| 42. | Commercial Excess Liability Policy No. MKLV4EUL101072, dated October 1, 2017, issued by Evanston Insurance Company to Seller. |
| 43. | Workers Compensation and Employers Liability Insurance Policy No. 100 0001871, dated October 1, 2017, issued by Starr Indemnity & Liability Co. to Seller. |

| Contracts |
|---|
| 44. Flood Insurance Policy (Office & Warehouse) No. RL10047418, dated February 22, 2018, issued by National Flood Services to Seller. |
| 45. Flood Insurance Policy (Foundry & Office) No. RL00033884, dated February 22, 2018, issued by National Flood Services to Seller. |
| 46. Flood Insurance Policy (Mobile Equipment Storage) No. RL00033786, dated March 1, 2018, issued by National Flood Services to Seller. |
| 47. Flood Insurance Policy (Human Resources) No. RL00033791, dated March 1, 2018, issued by National Flood Services to Seller. |
| 48. Flood Insurance Policy (X-Ray Building) No. RL10047406, dated March 1, 2018, issued by National Flood Services to Seller. |
| 49. Flood Insurance Policy (200 E. Bellingham St.) No. FLD1732352, dated March 25, 2018, issued by National Flood Services to Seller. |
| 50. Sivyer Steel Corporation Hourly Employees' 401(k) Plan. |
| 51. Sivyer Steel Corporation Salaried Employees' Profit Sharing Plan. |
| 52. Sivyer Steel Corporation Retirement Income Plan. |
| 53. Sivyer Steel Corporation Postretirement Welfare Plan. |
| 54. Sivyer Steel Corporation Salaried and Hourly Employees Medical Plan, provided by Continental Benefits (Group #CB530). |
| 55. Sivyer Steel Corporation Salaried and Hourly Employees Pharmacy Benefit Plan, provided by CVS Caremark (RX Group #RX7851). |
| 56. Sivyer Steel Corporation Salaried and Hourly Employees Flexible Spending Accounts/Section 125 (FSA), provided by Diversified Benefit Services, Inc. |
| 57. Sivyer Steel Corporation Salaried and Hourly Employees Dental Plan, provided by Delta Dental of Iowa (Group #92063). |
| 58. Sivyer Steel Corporation Salaried and Hourly Employees Vision Plan, provided by UnitedHealthcare (Group #714524). |
| 59. Sivyer Steel Corporation Salaried and Hourly Employees Basic Life and Accidental Death & Dismemberment Plan, provided by Unum Group (Group #581269). |

| Contracts |
|---|
| 60.     Sivyer Steel Corporation Salaried and Hourly Employees Short-Term and Long Term Disability Plan, provided by Unum Group. |
| 61.     Sivyer Steel Corporation Hourly Employee Assistance Program (EAP), provided by Employee and Family Resources, Inc. |
| 62.     Consulting Agreement dated January 1, 2012 between Fermet Steel and Metal Works Ltd. and the Seller |
| 63.     Agreement between Global Diligence HK Ltd. and the Seller. |
| 64.     Equipment Lease Agreement Contract 001-6245714-004 dated April 4, 2016 with Dell Financial Services and Seller |
| 65.     Lease Agreement, dated as of December 17, 2013, between U.S. Bank Equipment Finance, a division of U.S. Bank National Association, and Seller. |

**EXHIBIT D TO THE DISCLOSURE STATEMENT OF SIVYER STEEL CORPORATION, DEBTOR AND DEBTOR-IN-POSSESSION, DATED NOVEMBER 15, 2019**

Debtor's Liquidation Analysis

**SIVYER STEEL CORPORATION**

**LIQUIDATION ANALYSIS FOR DISCLOSURE STATEMENT**

|  | PLAN ANALYSIS | | LIQUIDATION ANALYSIS | |
|---|---|---|---|---|
|  | Conservative | Optimistic | Conservative | Optimistic |
| **Cash Balance estimated at 2/1/2019** | $ 370,000 | $ 370,000 | $ 370,000 | $ 370,000 |
| **Remaining Asset Recoveries** |  |  |  |  |
| Est. collections from retained a/r | $ - | $ 35,000 | $ - | $ 35,000 |
| Est. potential recovery from U.S. Truste for overpayment of admin. Fees | $ - | $ 42,380 | $ - | $ 42,380 |
| Est. potential recovery by Creditors Committee against Sivyer Steel Castings LLC | $ - | $ 450,000 | $ - | $ - |
| **Estimated Funds Available to Pay Claims** | $ 370,000 | $ 897,380 | $ 370,000 | $ 447,380 |
| **Administrative Expenses:** |  |  |  |  |
| Professional Fees | $ (340,000) | $ (340,000) | $ (340,000) | $ (340,000) |
| 503(b)(9) Claims | $ (266,043) | $ (266,043) | $ (266,043) | $ (266,043) |
| **Amount Available or Pre-Petition Claims** | $ (236,043) | $ 291,337 | $ (236,043) | $ (158,663) |
| Priority Claims and Allowed Security Claims |  |  |  |  |
| Tax Claim | $ (1,250) | $ (1,250) | $ (1,250) | $ (1,250) |
| Open postpetition payables | $ (155,000) | $ (155,000) | $ (155,000) | $ (155,000) |
| **Amount Available to General Unsecured Payables** | $ (392,293) | $ 135,087 | $ (392,293) | $ (314,913) |
| Estimated Unsecured Claims | $ 10,064,652 | $ 10,064,652 | $ 10,064,652 | $ 10,064,652 |
| **Estimated Distribution % to Unsecured Creditors** | **0.0%** | **1.3%** | **0.0%** | **0.0%** |